

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-07-00093-CR

_____


JEFFREY DANIEL HUGHEN, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 336th Judicial District Court
Fannin County, Texas
Trial Court No. 21963


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

When anger and alcohol intersect, unfortunate results can ensue. Jeffrey Daniel Hughen's alcohol consumption, paired with an angry argument with his girlfriend, was followed by serious injuries inflicted on Barry Milhollon by Hughen, Hughen's jury trial and conviction for attempted murder, the enhancement of his sentence allowed near the end of trial, and his sentence of life imprisonment.

In an argument applicable to this case and its companion,[1] Hughen argues that the trial court reversibly erred by denying his motion to suppress a recorded videotaped interview made after he had invoked his right to counsel and by allowing the State to question a detective for the purpose of explaining to the jury what it had just seen on the video recording. Hughen makes two other arguments, relevant only to this appeal: (a) that the trial court denied him due process by—after closing evidence in the punishment phase of trial but before reading the charge and having final arguments—changing its mind and allowing the State to use a prior conviction for enhancement rather than merely as a "bad act"; and (b) that the evidence is insufficient to support his conviction.

We affirm the trial court's judgment because (1) the trial court's decision at the end of trial to allow sentence enhancement was not reversible error, (2) admitting evidence of Hughen's

---

[1]A companion appeal before this Court, cause number 06-07-00092-CR, is an appeal from Hughen's conviction for aggravated assault with a deadly weapon, for which he was sentenced to twenty years' imprisonment.

custodial admission was not error, and (3) legally and factually sufficient evidence supports Hughen's conviction.

*(1)*      *The Trial Court's Decision at the End of Trial to Allow Sentence Enhancement Was Not Reversible Error*

Hughen contends the trial court should not have allowed the State to enhance punishment of this offense under Section 12.42(b) of the Texas Penal Code because the court—having first excluded use of a particular offense as an enhancement (due to "inadequate"[2] notice by the State)—changed its mind after both the State and Hughen had rested at the punishment stage of trial.

Until the trial court's change of mind, the punishment phase of trial had been conducted under a prior ruling that no enhancement would be allowed. After the trial court's initial ruling that enhancement would not be allowed, the State asked the court to reconsider its ruling. But, with the jury ready to hear the punishment evidence, the trial court took the request under advisement and proceeded with the punishment phase of trial. Had the trial court maintained its earlier ruling to deny enhancement, the applicable range of punishment would have been between two and twenty years' confinement; with the enhancement, the range of punishment jumped to twenty-five to ninety-nine years or life.

---

[2]The record shows that the State filed a notice of intent to enhance punishment March 13, 2007, but provided no cause number for the alleged prior conviction. The State filed a separate notice of intent to introduce evidence of extraneous offenses May 1, 2007. The trial court made no ruling on whether it would allow enhancement until the beginning of the punishment stage of the trial. At that time, the court ruled that the notice of intent to enhance was inadequate because it cited an apparently erroneous code provision that made it appear that the State was attempting to enhance Hughen's sentence twice and because the prior conviction's cause number was not cited in the notice.

With the enhancement denial in place, but the reconsideration under advisement, the punishment phase of trial was conducted and was near its conclusion. Punishment evidence had been received, witnesses had testified and left, and the case was essentially over. Then, the State reurged its request that the court reconsider its ruling on enhancement. The State argued that, so long as the defendant could reasonably identify the alleged prior conviction, it was not mandatory to provide the actual cause number.[3] The State further argued that its mistake in naming an incorrect statute number, was in this case, not material, because it was, after all, still an enhancement provision.[4] After much discussion and amid a flurry of objections from Hughen, the court reversed its ruling. After the court changed its ruling, the State was allowed to reopen the evidence to

---

[3]Courts have held that, in alleging prior convictions for enhancement of punishment, the allegations should include the court in which the conviction was obtained, the time of the conviction, and the nature of the offense. *Hollins v. State*, 571 S.W.2d 873, 876 (Tex. Crim. App. 1978). They are also sufficient, however, when the prior convictions were described as felonies, the exact nature of the offenses was given, the cause numbers of the convictions were obtained, and the dates of such convictions were set. *Id.*; *Arce v. State*, 552 S.W.2d 163, 164 (Tex. Crim. App. 1977) (enhancement paragraph gave sufficient notice to enable accused to locate alleged prior felony convictions, when State gave cause number and county). *See Chavis v. State*, 177 S.W.3d 308, 312 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

This Court has previously observed in the caselaw four critical components of a proper notice of intent to use a prior conviction to enhance a sentence: (1) a writing, (2) given in a timely manner, (3) describing the prior conviction to be used, sufficient to enable the defendant to find the records so he or she can properly prepare for trial on the question of whether he or she is the same person identified in the records of such conviction, and (4) containing an expression of intent to use the conviction to enhance the defendant's sentence. *McNatt v. State*, 152 S.W.3d 645, 652 (Tex. App.—Texarkana 2004), *aff'd in part and rev'd in part*, 188 S.W.3d 198 (Tex. Crim. App. 2006).

[4]There is no suggestion of any reason why this error would be material to knowledge that the State sought to enhance punishment, even if the incorrect statute was cited by the State.

4

reintroduce one piece of evidence, the court instructed the jury with the enhancement allegation, Hughen pled "not true" to the enhancement, and the jury assessed punishment at life imprisonment.

Hughen argues that the trial court denied him due process of law because of its ruling and extends his argument to contend that the court's late decision denied his right to effective assistance of counsel.

The State argues that this issue was waived. The State first argues that the issue is not preserved because defense counsel did not object when the State, immediately after the initial ruling, stated that it intended to ask the trial court to revisit its ruling at some later point. Counsel's objection at the time of the court's revised ruling sufficiently preserves error, at least as to the objections expressed to the trial court at that time. *See* TEX. R. APP. P. 33.1.

The State's alternative waiver argument is that counsel's objection was not specific enough to preserve his current claim on appeal. The State's argument is essentially that counsel was not sufficiently precise in his argument to inform the trial court why the State thought the court's decision was erroneous.

For a contention to be raised on appeal, it must have been raised at trial by objection. *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999); *Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992). The objection is sufficient to preserve error for appellate review if the objection communicates to the trial court what the objecting party wants and why the objecting party is entitled to relief, doing so in a manner clear enough for the court to understand the objection and request at

5

a time when the trial court is in a position to do something about it. *See Lankston v. State*, 827 S.W.2d 907, 908–09 (Tex. Crim. App. 1992).

In a lengthy discussion with the trial court before it ruled, Hughen's counsel argued that the State's notice was invalid for a number of reasons,[5] reiterating his prior argument that the State's act of placing in the State's file its original notice of intent to use the priors for impeachment was insufficient to show an intent to use the prior convictions for enhancement and that the documents were inadequate on their face. He also pointed out that surprise was clearly shown as well because the State had made, and Hughen had rejected, a pretrial plea offer of twelve years' imprisonment. That offer was well below the twenty-five-year minimum of an enhanced sentence. Counsel argued, quite cogently, that the defendant demonstrably had understood for quite some time before trial that he was subject to a two- to twenty-year sentence, not a twenty-five to ninety-nine or life possibility.

Counsel also objected to the trial court's ruling on additional grounds. Counsel argued that procedurally—as opening statements had been made at punishment, all evidence had been offered,

---

[5]Most notably, he argues that the notice lists the wrong Texas Penal Code section under which enhancement was ultimately sought and that no cause number was included in the notice to identify the prior, directing the trial court to our opinion in *McNatt*, 152 S.W.3d 645, in which we addressed a marginally similar situation. Unfortunately, we have been confronted with more than one case across our district in which the State has misnumbered or mislabeled the Code provisions controlling matters that it wishes to pursue in a prosecution. Were the Texas Penal Code simple or brief, that might not be a problem. Considering the convoluted nature of the Code, and the difficulty that even experienced attorneys and judges have in working their way through numerous subdivisions, exceptions to exceptions, and numerous internal cross-references, it is unrealistic to think that such errors are meaningless. Defendants should be entitled to know, at the beginning of a prosecution, the nature of that prosecution.

6

and both parties had closed—the right to due process of law should prevent the court from allowing enhancement after the fact. He objected that reopening and tendering of evidence on that issue at this point, and re-creating the jury charge at that stage, denied Hughen due process.

On appeal, Hughen complains, not of the merits of the trial court's ultimate decision to allow the jury to consider sentence enhancement, but of the sequence and timing of that decision: an initial decision at the beginning of the punishment phase of trial not to allow enhancement, followed by a contrary decision, made essentially at the end of trial. Hughen suggests that he was without sufficient notice, but the notice of which he now more understandably complains is the extremely late notice of the trial court's ruling on enhancement, not the State's notice of its intent to seek enhancement.[6] The record reveals that the State consistently said it wanted to enhance Hughen's

[6]The cases uniformly hold that a defendant is entitled to notice of a prior conviction that the State intends to use for enhancement. *Brooks v. State*, 957 S.W.2d 30, 33 (Tex. Crim. App. 1997). Although proper notice of intent must be timely, it need not be pled in the indictment to be sufficient, so long as it is pled "in some form" prior to trial. *Id*. at 34. Proper notice informs the defendant that the State is seeking a greater penalty than it would seek absent the enhancement. Such notice allows the defendant to defend against such enhancement evidence, such as by showing a mistake in identity or that the prior convictions never became final. *Hollins*, 571 S.W.2d at 876.

The Texas Court of Criminal Appeals recently held that the statutory ten-day notice requirement need not be obeyed, as long as the defendant articulated no defense to the prior conviction. *See Villescas v. State*, 189 S.W.3d 290, 294 (Tex. Crim. App. 2006). That opinion distinguished between the notice that is required by statute and the notice that is constitutionally required, and "disavowed" any "special significance" of a ten-day-notice period. *Id*. While recognizing that statutory-notice periods "are designed to safeguard constitutional notice rights in a manner that is easy for the parties to follow and for courts to apply," the court concluded these notice periods do not control in a review for constitutional error. *Id*. Instead, reviewing courts determine "whether constitutionally adequate notice was given." *Id*.

7

sentence, but that the trial court changed its ruling at the end of trial. Because of the remarkable, late-trial, change in the court's ruling, Hughen's plight provokes sympathy. We are charged, however, with following where the law leads us based on the facts in the record.

In this instance, taken individually, the actions taken or allowed by the trial court are not erroneous.

A trial court has plenary jurisdiction to reconsider its interlocutory rulings, like that at bar, and retains that ability until a final judgment or order is entered in the cause and the decree becomes final. *See Rodriguez v. State*, 852 S.W.2d 516, 520 (Tex. Crim. App. 1993); *Fruehauf Corp. v. Carrillo*, 848 S.W.2d 83, 84 (Tex. 1993); *White v. Baptist St. Anthony's Hosp.*, 188 S.W.3d 373, 374–75 (Tex. App.—Amarillo 2006, pet. denied); *Orion Enters., Inc. v. Pope*, 927 S.W.2d 654, 658 (Tex. App.—San Antonio 1996, orig. proceeding). We hear no suggestion of any reason why the trial court's action in changing its mind was outside its authority.

Trial courts also have explicit authorization to reopen testimony to allow additional evidence. Thus, the court's act of reopening the evidence, though it came at the end of the punishment phase and before the charge was read or final arguments made, is not of itself error. Article 36.02 provides

---

In so doing, *Villescas* rejected the lower court's conclusion that the State must give notice before trial, explaining that "due process does not even require that the notice be given before the guilt phase begins, much less that it be given a number [of] days before trial." *Id.* (citing *Oyler v. Boles*, 368 U.S. 448 (1962)). Thus, if "a defendant has no defense to the enhancement allegation and has not suggested the need for a continuance in order to prepare one, notice given at the beginning of the punishment phase satisfies the federal constitution." *Id.* at 294; *see Callison v. State*, 218 S.W.3d 822, 823–25 (Tex. App.—Beaumont 2007, no pet.).

8

that "[t]he court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." TEX. CODE CRIM. PROC. ANN. art. 36.02 (Vernon 2007); *see State v. Cowsert*, 207 S.W.3d 347, 351 n.4 (Tex. Crim. App. 2006); *see also* TEX. CODE CRIM. PROC. ANN. art. 36.16 (Vernon 2006).

But, though the individual acts of the trial court were permissible, did they combine to create reversible error?  The sequence and timing of the decision to allow enhancement is claimed to have affected the plea negotiations and the trial of the punishment phase.  While its effect on plea negotiations is not raised as an independent ground for appeal, it is used to support Hughen's position that the lateness of the trial court's change in the "rules of engagement" made the punishment trial unfair, thus violating Hughen's right to due process of law.[7]

---

[7]Hughen also argues that the trial court's change of mind made his counsel constitutionally ineffective.  Claims of ineffective assistance of counsel are seldom successfully navigated in a direct appeal.  The standard of testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on this claim, an appellant must prove by a preponderance of the evidence (1) that his or her counsel's representation fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced the defense. *Id.* at 689; *Rosales v. State*, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999).

Also, we do not see how Hughen's trial counsel was ineffective.  He made entirely reasonable decisions about how to present Hughen's case and to respond to the State's actions, based on the information that he had available at the time.  Counsel argues that his representation at the punishment phase was made ineffective because he formulated his strategies and tactical decisions based on the trial court's ruling of no enhancement, but that, after counsel's decisions were made and his actions were fully completed, they were undermined by the court's decision to allow enhancement.  Under such a situation, he argues, his representation could not have been adequate. He specifically argues that his decisions to acquiesce to the admission of evidence including that of prior convictions was based upon the exceedingly lenient standard of the "bad acts" statute. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2007).  Under the normal effective-

9

As described in a more general context by the Texas Supreme Court, due process requires that the application of Texas law be neither arbitrary nor fundamentally unfair. *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 446 (Tex. 2007); *see Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Said another way, due process requires a fair trial before a fair tribunal. *See In re Murchison*, 349 U.S. 133, 136 (1955); *Esparza v. State*, 31 S.W.3d 338, 342 (Tex. App.—San Antonio 2000, no pet.); *Norris v. State*, 788 S.W.2d 65, 72 (Tex. App.—Dallas 1990, pet. ref'd).

At a minimum, due process guarantees the defendant notice of the charges against him or her. *Stevens v. State*, 891 S.W.2d 649, 650 (Tex. Crim. App. 1995); *Ward v. State*, 829 S.W.2d 787, 794 (Tex. Crim. App. 1992). The Texas Court of Criminal Appeals has recently reiterated and approved prior pronouncements on this issue.

> [The issue regarding a notice of sentence enhancement or of the comparable] deadly weapon allegation[] [is] characterized . . . as one of "notice" that is "firmly rooted in fundamental precepts of due process and due course of law--the right to be informed, at a bare minimum, that a particular proceeding (over and above the determination of guilt/innocence and sentence) will occur which may operate to further diminish the accused's liberty interest."
>
> This Court's previous pronouncements regarding the purpose of conveying proper notice of enhancement allegations are consistent with characterizing the pleading requirement as a right to notice rooted in due process . . . .

---

assistance-of-counsel rubric, and under this record, counsel was effective. Thus, the ineffective-assistance contention fails.

The ineffective-assistance argument, however, is also used to support Hughen's main argument: that the trial court's actions denied Hughen due process of law.

10

*Villescas*, 189 S.W.3d at 293 (quoting *Ex parte Patterson*, 740 S.W.2d 766, 774 n.7 (Tex. Crim. App. 1987)).  A defendant has a constitutional right to sufficient notice so as to enable him or her to prepare a defense, but this due-process requirement may be satisfied by means other than language in the charging instrument.  When a motion to quash is overruled, a defendant suffers no harm unless he or she did not, in fact, receive notice of the State's theory against which he or she would have to defend.  *Kellar v. State*, 108 S.W.3d 311, 313 (Tex. Crim. App. 2003).

This situation is the inverse of the one described in *Kellar* because the motion in this case was not overruled.  It was granted.  It is apparent that Hughen had pretrial notice that the State wanted to enhance, so he was aware of the State's intent to enhance both before and during trial—up to the point at which the punishment stage was about to begin and the trial court made its initial ruling to disallow the enhancement.  This sufficiently gave notice of intent to enhance; any effort to obtain information or documentation to contest the proposed enhancement would necessarily have been made before that point.

The situation before this Court has a twist, however.  The trial court ruled, as the punishment phase of trial began, that Hughen would not face enhancement.  The punishment phase of trial proceeded under that ruling, though with knowledge of the possibility of reconsideration by the trial court.  Only at the end of the punishment phase of trial did the trial court reverse course and allow the enhancement.

Notice given at the beginning of the punishment phase satisfies the Federal Constitution, if there is no defense to the allegation and no motion for a continuance to prepare a defense to the new information. But, does a trial court's initial denial of the enhancement, then a last-second approval of the enhancement, undermine the notice so as to deny a defendant his or her constitutional due-process safeguards?

In this instance, Hughen had notice before the trial began that the State intended to seek to enhance his sentence. Was he harmed in his ability to adequately present his defense at punishment because of reliance on the court's initial ruling?

In this case, Hughen did have the opportunity to show what he could have obtained to disprove the State's prior conviction, or to explain how its admission was objectionable, but has been able to provide this Court with nothing that would convince us that harm resulted from the changed ruling. Even though Hughen pled "not true," there is nothing to suggest (and Hughen does not argue that) the evidence proving the prior conviction was in some way inadequate.[8] While Hughen complains that the events necessarily affected his defense, he has not suggested that the offense used to enhance was in any way defensible. Also, because a trial court may withdraw or change its rulings, counsel simply cannot rely on initial rulings remaining in place until the trial is complete.

_____

[8]An additional problem in allowing this procedure is the one posited by Hughen in this case—the evidence ultimately used to enhance had already been introduced for all purposes. Of course, during the proceeding, the "all purposes" for which it was introduced—was restricted by the trial court's denial of the request to enhance to use only as proof of prior bad acts. Nonetheless, in this case, there is no indication that Hughen had any viable means of attacking the State's proof of the prior conviction.

12

Finally, Hughen did not seek a continuance of the conclusion of the punishment proceeding after the trial court's late ruling. While a late continuance may not sit well with judge or jury, the option does exist, and it was not used here.

The remaining effect of this series of events, Hughen's claimed lost opportunity to accept a favorable plea agreement of twelve years' imprisonment, seems striking when compared with his sentence of life imprisonment. The record suggests, however, that the offer of twelve years and Hughen's rejection of that offer took place some time before trial. Therefore, Hughen's rejection of that offer could not have been in reliance on the trial court's initial rejection—at the beginning of the punishment phase of trial—of the sentence enhancement.

Even if, during the punishment phase of trial, Hughen in some way relied on the trial court's initial ruling, that reliance is suspect. We believe a party predicts or relies on a trial court ruling at his or her peril, especially when the opposing party seeks reconsideration and the trial court takes that reconsideration under advisement until a later time. For example, a subsequent change in the substantive law does not make a plea involuntary, unless some State agent has misrepresented facts to obtain the plea. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Worrell v. State*, 751 S.W.2d 566, 567 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd).

In *Union Carbide Corp. v. Moye*, 798 S.W.2d 792 (Tex. 1990) (orig. proceeding), the trial court had scheduled a hearing on defendants' motion to transfer venue and had stated that the hearing might take eight weeks. But, at the time of the hearing and on plaintiffs' motion, the trial court ruled

13

that evidence would be submitted in written form, not in the usual and expected oral format, and then denied the defendants' motion for continuance, directing defendants to "present what you have now." The Texas Supreme Court ruled that the trial court had taken part in misleading the defendants *and* had denied their motion for a continuance, thus depriving them of due process. But a trial court's change in interlocutory decisions does not necessarily deny a party due process, especially where no continuance was sought to allow a chance to respond to the change. *See Rogers v. Ricane Enters., Inc.*, 852 S.W.2d 751, 764 (Tex. App.—Amarillo 1993), *rev'd on other grounds*, 884 S.W.2d 763 (Tex. 1994). "There is no vested right in the decisions of a court and a change of decision does not deprive one of equal protection of the laws or property without due process of law." *In re Adjudication of Upper Guadalupe River Segment of Guadalupe River Basin*, 625 S.W.2d 353, 360 (Tex. Civ. App.—San Antonio 1981), *aff'd*, 642 S.W.2d 438 (Tex. 1982) (change in law affecting property interest) (citing *Baumann v. Smrha*, 145 F. Supp. 617, 624–25 (D. Kan. 1956), *aff'd*, 352 U.S. 863 (1956)).

Though this is far from a desirable procedure, we conclude it was not error, did not deny Hughen due process of law, and is not demonstrated to have been harmful. For all of these reasons, we overrule this point of error.

*(2)* *Admitting Evidence of Hughen's Custodial Admission Was Not Error*

Hughen also contends the trial court erred by denying his motion to suppress. The record contains two distinct sets of warnings given to Hughen. The first was before a magistrate on the

14

morning of July 17, 2006, at 8:20 a.m., at which time Hughen was informed of his rights and asked that a lawyer be appointed to represent him. The second set of warnings occurred when officers sought to question him about the incident about 11:30 a.m. that morning, at which time an officer gave him the generic *Miranda*[9] warnings, which were acknowledged by Hughen, along with a waiver stating that he did not need a lawyer present at that time and agreeing to talk to the officer.

Counsel argues that Hughen requested counsel when he was arrested and arraigned. Nonetheless, police, without initiation of contact by Hughen and without waiting until counsel was appointed, took Hughen from his cell and gave him a waiver form, which he signed. They interrogated Hughen, and State's Exhibit 14 is a video recording of that interview, in which he admitted stabbing the victim.

The State agrees that this is how matters occurred but argues that, because Hughen's request for counsel was made at a magistrate's hearing, it was not made in connection with police questioning and "did not clearly request the presence of counsel during questioning." The State argues, in effect, that, if counsel is not requested adequately at or in association with the beginning of custodial interrogation, the right to counsel in that interview has not been invoked.

Two separate constitutional provisions are involved here: the Fifth and Sixth Amendments. This argument asserts error transgressing Hughen's Fifth Amendment right to counsel because Hughen had previously stated that he wished to be represented by counsel.

---

[9]*Miranda v. Arizona*, 384 U.S. 436 (1966).

The Fifth Amendment to the United States Constitution requires law enforcement officials, before questioning a person in custody, to inform the person of his or her right to remain silent and that any statement he or she makes may be used against him or her in court. *Miranda*, 384 U.S. at 473–74; *see Dickerson v. United States*, 530 U.S. 428, 438–39 (2000); *Michigan v. Mosley,* 423 U.S. 96, 103–04 (1975). If the individual indicates in any manner, either before or during questioning, that he or she wishes to remain silent, the interrogation must stop. *Id.*; *Miranda*, 384 U.S. at 473–74. Any declaration of a desire to terminate the contact or inquiry will suffice, as will silence in the face of repeated questions. *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008).

Courts have recognized, however, that an invocation of the right to counsel may be made separately pursuant to the Sixth Amendment right to have the assistance of counsel for his or her defense. This situation was directly addressed in *Green v. State*, 934 S.W.2d 92 (Tex. Crim. App. 1996). In *Green*, the court recognized that the United States Supreme Court had held that invocation of an accused's Sixth Amendment right to counsel at an initial appearance does not constitute an invocation of his Fifth Amendment right to counsel. *Id.* at 97; *see McNeil v. Wisconsin*, 501 U.S. 171 (1991). The Texas Court of Criminal Appeals acknowledged that,

> [a]lthough the Fifth Amendment right to counsel is non-offense specific, and once asserted prevents any further interrogation without the presence of counsel, [invocation of] the Fifth Amendment right cannot be inferred from the invocation of the Sixth Amendment right in view of the differing purposes of the two rights.

*Green*, 934 S.W.2d at 97.

16

In *McNeil*, the Court concluded the invocation of an accused's Fifth Amendment right "requires, at a minimum, some statement that can reasonably be construed to be expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." The Court held that "[r]equesting the assistance of an attorney at a bail hearing does not bear that construction." *McNeil*, 501 U.S. at 178.

As in *Green*, Hughen does not claim, nor does the record show, that he was subjected to custodial interrogation when he appeared before the magistrate and made a formal request to have counsel appointed. It was simply not an expression for assistance in dealing with custodial interrogation by the police. Thus, officers were not required to refrain from initiating interrogation, and it is clear that Hughen waived his right to silence and to counsel in that regard at the time questioning commenced.

A ruling admitting or excluding evidence is reviewed for abuse of discretion. *Ramos*, 245 S.W.3d at 418. We will uphold the ruling if reasonably supported by the record and correct under any theory of law applicable to the case. *Id.* We find that the trial court correctly concluded that Hughen failed to invoke his Fifth Amendment right to counsel. *See McNeil*, 501 U.S. at 178; *Green*, 934 S.W.2d at 97. We overrule this point of error.

*(3)     Legally and Factually Sufficient Evidence Supports Hughen's Conviction*

Hughen also contends the evidence is legally and factually insufficient to support his conviction. In reviewing the legal sufficiency of the evidence, we view all of the evidence in the

light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In a factual sufficiency review, we review all the evidence, but do so in a neutral light and determine whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

The evidence generally shows that Hughen and his girlfriend, Nina Batts, spent the whole day, July 15, 2006, drinking and arguing. Eventually, Batts left the house. Hughen, suspecting what Batts planned to do, took a knife and went looking for her. When Hughen found that Batts was inside the house of two men, Milhollen and Eric Graham, Hughen demanded that she come out. Batts declined, and Milhollon and Graham came outside to talk with Hughen. The three men talked, more or less peaceably, and shared a beer or two. A short time after Milhollon and Graham returned inside, Hughen began banging on the door and demanding that Batts come out. Eventually, Batts did come out, with Milhollon. Hughen and Batts resumed their argument, moving into the yard from the porch so they could have more room to swing at each other. Hughen hit Batts. Milhollen ordered Hughen to leave. Instead, Hughen grabbed Batts and put his knife to her throat. Milhollon attempted to intervene, and a fight ensued, during which Milhollon was stabbed in the throat and staggered off. Hughen evidently retained his grip on Batts during the entire altercation. Graham,

18

whose bath had been shortened by the noise outside, came out, dripping wet, and tried to persuade Hughen to release Batts. When Graham got close enough, he grabbed Hughen's arm, with which he held the knife, and attempted to disarm him.

Graham was physically thrown about by Hughen and could not disarm him, though he managed to keep his grip on Hughen. In the process, Graham called for help, and a large neighbor came over and hit Hughen hard enough to knock him down. Together, Graham and the neighbor disarmed Hughen. They then let Hughen up, whereupon he promptly chased Batts all the way around the house before running headlong into two newly arrived police officers.

Sergeant David Thompson testified that he directed Batts to get behind him, and then confronted Hughen. Thompson, having been told of a stabbing, drew his gun and ordered Hughen to the ground. Hughen, instead, moved toward the officers, prompting one to fire a shot into the ground in front of Hughen. Hughen continued to advance. Officer Richard Lundy tackled Hughen, and Thompson sprayed Hughen in the face with pepper spray. Even then, the officers had to struggle with Hughen before eventually subduing him, arresting him, and taking him to jail.

Hughen contends the evidence is insufficient because it does not show that he had a specific intent to kill the victim, as required by statute. He argues that a decision otherwise would convert every aggravated assault case into an attempted murder prosecution.

The offense of murder under Section 19.02(b)(1) of the Texas Penal Code requires a specific intent to kill. TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2003); *Flanagan v. State*, 675 S.W.2d

19

734, 741 (Tex. Crim. App. [Panel Op.] 1982) (op. on reh'g).  Criminal attempt under Section 15.01 requires the intent to commit the offense attempted.  TEX. PENAL CODE ANN. § 15.01(a) (Vernon 2003).  Thus, a specific intent to kill is a necessary element of attempted murder.  *Flanagan*, 675 S.W.2d at 741.  Therefore, the following are the elements of attempted murder:  (1) a person, (2) with the specific intent to cause the death of another, (3) does an act amounting to more than mere preparation, (4) but fails to effect the death of the other individual.  TEX. PENAL CODE ANN. §§ 15.01(a); 19.02(b); *Roberson v. State*, 144 S.W.3d 34, 38 (Tex. App.—Fort Worth 2004, pet. ref'd); *Jeffley v. State*, 938 S.W.2d 514, 517 (Tex. App.—Texarkana 1997, no pet.).

In this case, how events developed is largely uncontested.  As set out above, Hughen (in an inebriated state) followed Batts (with whom he had been fighting all day) to Milhollon's house.  He took along a lockblade knife.  Batts initially declined to come out, and Milhollon and Graham met Hughen outside, where they talked more or less vociferously for a while.  Eventually Batts came outside, and she and Hughen argued some more.  When Batts tried to go back inside, Hughen grabbed her and tried to drag her off.  Milhollon attempted to intervene, and Hughen used the knife, with which he had been threatening Batts, to cut Milhollon a number of times.

The record shows that Milhollon had a deep cut across the bridge of his nose and cuts on his knee and shoulder.  The most severe injuries were two deep puncture wounds to the base and back of Milhollon's neck.  Those wounds resulted in a great deal of blood loss; there was testimony that, without medical assistance, Milhollon would have died from those injuries.

20

The evidence thus shows, not that Hughen went to the house intending to kill Milhollon, but that he went there angry or enraged and prepared to fight, which he did. He used a knife to threaten a woman, and attempted to drag her away, and then turned on her erstwhile rescuer with great zeal, stabbing and slashing him multiple times. There was evidence that Hughen did not remember the event and that someone on the porch had stated, "I'll kill you both," although evidence was not specific as to who made that threat. When the other occupant of the house, Graham, came outside after Milhollon had been knifed, Hughen told Graham, "I'm going to kill her and I'm going to kill you."

There was nothing to indicate that anyone else had a weapon, and Hughen made statements to the police to the effect that he would kill both Batts and her lover if he caught them together, by stabbing them in the throat.

Viewing the evidence in the light most favorable to the prosecution, we conclude a rational jury could have found the essential elements of the crime beyond a reasonable doubt. We also conclude, after viewing all of the evidence in a neutral light, that it was not so weak as to prevent the jury from convicting and that the verdict is not so outweighed by the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule these points of error.

We affirm the judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:    March 24, 2008
Date Decided:    June 5, 2008

Publish