



## OPINION

No. 04-09-00829-CR

Daniel **MARTINEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CR-4340
Judge Sharon S. MacRae, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Karen Angelini, Justice
Sandee Bryan Marion, Justice
Phylis J. Speedlin, Justice

Delivered and Filed:  December 22, 2010

AFFIRMED

A jury found appellant, Daniel Martinez, guilty of aggravated sexual assault and assessed

punishment at confinement for sixty-five years.  We affirm.

### BACKGROUND

On March 29, 2008, J.M. was raped while walking home.  She did not know her attacker,

so during the attack she bit off part of his ear lobe and kept it in her mouth until she was able to

put it in her pocket, where she saved it to give to the police.  After the rape, the attacker fled on

foot, and a passer-by allowed J.M. to use his cell phone to call 911. When police officers arrived, J.M. gave them the ear lobe.

San Antonio Police Detective Kim Bauer received the evidence collected by the crime scene investigator, which included the ear lobe and J.M.'s rape kit. Detective Bauer alerted patrolling police officers to look for a man matching the description of J.M.'s rapist, and appellant was apprehended and arrested. After appellant's arrest, Detective Bauer personally collected two cheek swabs from him to establish a known DNA sample. At trial, Detective Bauer produced an envelope containing the swabs and testified the cheek swabs were taken from the appellant. Later, when denying appellant's request for directed verdict, the trial court expressly acknowledged Detective Bauer's testimony linked the cheek swabs to appellant.

Erin Reat, a quality assurance manager for the Bexar County Criminal Investigation Laboratory, analyzed the DNA taken from the ear lobe and compared it to the DNA contained in the cheek swabs. During Reat's testimony, the State offered the ear lobe into evidence. Appellant objected to the admission of the ear lobe, but the court overruled the objection and admitted the evidence. Next, the State attempted to offer appellant's cheek swabs into evidence, and appellant's trial counsel objected, arguing the swabs had not been linked to appellant. The court sustained appellant's objection, and the cheek swabs were not admitted. However, over appellant's strenuous objections, Reat testified that based on his comparison of the two DNA samples, he concluded the ear lobe and the cheek swabs were a genetic match.[1]

Amy Cardone, a forensic scientist with the Bexar County Criminal Investigation Laboratory, tested several items from J.M.'s rape kit, including vaginal swabs and smear, rectal swabs and smear, oral swabs, hand swabs, underwear debris, the victim's known saliva sample,

---

[1] Specifically, Reat testified appellant was "not excluded" as the source of the ear lobe's DNA. Reat explained that, using the genetic testing process, the odds of someone else also being "not excluded" as the source of the ear lobe's DNA would be approximately 1 in 54.6 quadrillion.

and the ear lobe purportedly taken from appellant during the assault. Cardone did not perform any DNA analysis, but rather tested the items for the presence of blood, semen, and saliva. She testified she found chemical indicators of the presence of blood on the hand swabs only. Appellant objected that there was insufficient scientific evidence to support Cardone's expert testimony, but the objection was overruled.

The next morning, after both parties rested and before closing arguments, the court told the parties outside the presence of the jury:

> We're getting ready to argue the case to the jury. And I want to correct a couple of mistakes that I made earlier in the trial. I just—I was distracted, unfortunately, by something unrelated to the trial. And I—I need to correct these mistakes.
>
> When [the State] offered . . . the envelope containing the [cheek] swabs that the officer took from [appellant], I should not have sustained [appellant's] objection that those were not connected to [appellant]. I thought [appellant's] objection was they had yet to connect him to the offense. And I made a mistake so I'm going to admit [the cheek swabs].
>
> I am going back to [appellant's] request yesterday to have the Court instruct the jury to disregard the testimony of Ms. Cardone. And . . . [appellant's] request was well taken. I am going to instruct [the jury] to disregard that. Because the State never—never produced any evidence to link that rape kit up with [J.M.]. So I'm going to instruct [the jury] to disregard Ms. Cardone's testimony altogether.

Appellant requested a mistrial based on both the new ruling admitting the cheek swabs and the instruction to disregard Cardone's testimony. The court denied appellant's request for mistrial, and appellant was convicted of aggravated sexual assault.

## AMENDMENT OF PRIOR RULING

In his first issue, appellant contends the trial court abused its discretion by, *sua sponte*, admitting the cheek swabs after both sides rested but before closing arguments. We disagree. Until the argument of a case has concluded, the trial court has the discretionary power to reconsider its interlocutory rulings. *Rodriguez v. State*, 852 S.W.2d 516, 520 (Tex. Crim. App.

1993) (en banc) (trial court may change order declaring a mistrial); *Hughen v. State*, 265 S.W.3d 473, 482 (Tex. App.—Texarkana 2008) (trial court may change punishment phase ruling prohibiting enhancement evidence), *aff'd*, 297 S.W.3d 330 (Tex. Crim. App. 2009); *Montalvo v. State*, 846 S.W.2d 133, 138 (Tex. App.—Austin 1993, no writ) (trial court may change pretrial ruling suppressing evidence).

In *Montalvo v. State*, the Austin Court of Appeals concluded the trial court did not abuse its discretion by rescinding its prior order granting a pretrial motion to suppress after the State urged a motion to re-open the evidence during trial. *Montalvo*, 846 S.W.2d at 138. The court relied on Texas Code of Criminal Procedure article 36.02, which states: "The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." TEX. CODE CRIM. PROC. ANN. art. 36.02 (West 2007). Article 36.02 grants the trial court discretion to reopen a suppression hearing "if it appears necessary to the due administration of justice." *Montalvo*, 846 S.W.2d at 137.

Similarly, in *Hughen v. State*, the trial court initially ruled that enhancement would not be allowed in the punishment phase but took the State's request to offer enhancement evidence under advisement. *Hughen*, 265 S.W.3d at 477. The punishment phase was near its conclusion when the State re-urged its request and the trial court reversed its prior ruling. *Id.* The Texarkana Court of Appeals concluded the trial court did not err and the trial court's "remarkable, late-trial, change in [its] ruling" did not deny Hughen due process of law, reasoning: "We believe a party predicts or relies on a trial court ruling at his or her peril." *Id.* at 479, 482.

Here, the trial court sustained appellant's initial objection to the admissibility of the cheek swabs but later stated the ruling was a mistake caused by an unrelated distraction and, *sua*

*sponte*, admitted the cheek swabs. Although our sister courts in *Montalvo* and *Hughen* did not expressly sanction the trial court's right to reconsider its own rulings *sua sponte*, we find no reason to conclude trial judges must be chained to erroneous rulings until a party urges reconsideration. Accordingly, we hold the trial court in this case did not abuse its discretion by, *sua sponte*, admitting the cheek swabs.

## MISTRIAL

In his second issue, appellant contends the trial court erred by denying his two requests for mistrial. Appellant's first request for mistrial was based on the *sua sponte* admission of the cheek swabs. His second request for mistrial was made when the trial court struck the testimony of forensic scientist Amy Cardone and instructed the jury to disregard Cardone's testimony in its entirety. We review the trial court's ruling on a motion for mistrial for abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). A mistrial is required "only in extreme circumstances, where the prejudice is incurable." *Id.* (quoting *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). We will uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.*

Here, appellant first requested a mistrial after the trial court changed its decision and admitted the cheek swabs. Appellant argues that because the trial court permitted Erin Reat, the DNA analyst, to testify about the unadmitted evidence over appellant's repeated objections, appellant's trial counsel was made to look obstructive in front of the jury. Reat was one of nine State's witnesses who testified at trial, and Reat's testimony comprised only about twenty-five pages of a nine-volume trial record. While Reat's testimony was significant, it was not so significant that appellant's trial counsel's repeated objections to it created an "extreme

circumstance" requiring mistrial. Accordingly, we believe the trial court did not abuse its discretion by denying appellant's first motion for mistrial.

Appellant also appeals the trial court's denial of his request for mistrial based on the striking of Cardone's testimony. Appellant initially objected to Cardone's testimony regarding her analysis of the rape kit contents on the ground that the State failed to adequately link the rape kit to J.M. The trial court overruled appellant's objection but later told the parties the objection should have been sustained and instructed the jury to disregard Cardone's testimony in its entirety. On appeal, appellant contends the instruction to disregard Cardone's testimony in its entirety was insufficient to cure the error because of the overwhelming probability that the jury would be unable to follow the instruction.

"Generally, a mistrial is only required when the improper evidence is 'clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury.'" *Hinojosa v. State*, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999). Otherwise, where the prejudice is curable, an instruction to disregard eliminates the need for a mistrial. *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004) (en banc); *see also Christ v. State*, 480 S.W.2d 394, 396 (Tex. Crim. App. 1972) (instruction to disregard records custodian's testimony was sufficient to cure any prejudice because the testimony was struck in its entirety).

Here, Cardone testified that indicators of blood were found on J.M.'s hands; however, she admitted she did not perform DNA analysis of the swabs, and she did not state or imply the blood belonged to appellant. Thus, we conclude Cardone's testimony was not "clearly calculated to inflame the minds of the jury." The instruction to disregard Cardone's testimony in its entirety was sufficient to cure any improper conclusions the jury might have drawn from it,

and the trial court did not abuse its discretion by denying appellant's motion for mistrial on that ground.

## CONCLUSION

We overrule appellant's issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice

PUBLISH