ACCEPTED
06-15-00125-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
10/15/2015 9:53:52 AM
DEBBIE AUTREY
CLERK

IN THE COURT OF APPEALS
FOR THE SIXTH COURT OF APPEALS DISTRICT OF TEXAS
TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

10/15/2015 9:53:52 AM

DEBBIE AUTREY
Clerk

| | | |
|---|---|---|
| CONSTANTINO RIOS MORALES | * | |
| | * | |
| | * | |
| VS. | * | NO. 06-15-00125-CR |
| | * | |
| THE STATE OF TEXAS | * | |

ON APPEAL FROM CAUSE NO. F48830
249TH JUDICIAL DISTRICT COURT
JOHNSON COUNTY, TEXAS

LEAD COUNSEL FOR THE STATE
DALE S. HANNA
DISTRICT ATTORNEY
204 S. BUFFALO, SUITE 209
GUINN JUSTICE CENTER
CLEBURNE, TEXAS 76033
817/556-6801
BAR NO. 08918500

DAVID W. VERNON
ASSISTANT DISTRICT ATTORNEY
JOHNSON COUNTY, TEXAS
BAR NO. 00785149
davidv@johnsoncountytx.org

ORAL ARGUMENT *NOT* REQUESTED

TABLE OF CONTENTS

Names of All Parties ...................................................................................... v-vi

Index of Authorities ..................................................................................... vii-x

Statement of the Case.......................................................................................1

Statement of Facts......................................................................................... 2-3

Argument and Authorities................................................................................ 4-41

*Reply to Appellant's Issue*
*Number One:*               The evidence was sufficient to support
                            Appellant's conviction in Count One..... 4-12

                            A.      Standard of review concerning the
                            sufficiency of the evidence to convict....... 4-6

                            B.      Relevant law concerning possession
                            of a controlled substance ......................... 6-7

                            C.      The evidence was sufficient to
                            establish that Appellant knowingly
                            possessed the methamphetamine ........... 8-10

                            D.      The evidence was sufficient to
                            establish that Appellant possessed the
                            methamphetamine with the intent to deliver.
                            ........................................................... 10-12

*Reply to Appellant's Issue*
*Number Two:*               The trial judge remained a neutral arbiter
                            and did not deny Appellant a fair and
                            impartial trial....................................... 13-21

                            A.      Relevant facts ............................ 14-16

                            B.      Relevant law and standard of review

ii

........................................................ 16-17

C. *Appellant failed to preserve his issue for appellate review* ...................................17

D. *The trial court's remarks did not violate Appellant's due-process rights to a fair and impartial trial* ......................... 17-18

E. *Harmless error* ........................... 18-21

*Reply to Appellant's Issue Number Three:* *The trial court properly denied Appellant's motion for mistrial* ............................... 22-26

A. *Relevant facts*...................................23

B. *Relevant law and standard of review* ........................................................ 23-24

 1. *Motions for mistrial* .........................23

 2. *Impermissible comments by trial court on the weight of the evidence* .......... 23-24

C. *Appellant failed to preserve his issue for appellate review.* ............................ 24-25

D. *No abuse of discretion* ............... 25-26

*Reply to Appellant's Issue Number Four:* *The trial court did not err in denying Appellant's motion to suppress* ............ 27-41

A. *Relevant facts*............................. 28-31

B. *Standard of review – trial court's ruling on a motion to suppress* ............ 31-32

iii

C. *Relevant law and standard of review—standing* ................................ 32-33

D. *Relevant law — the doctrine of spoliation*...................................33

E. *Appellant failed to preserve all but two issues for appellate review*............ 34-36

F. *Appellant lacks standing to challenge the search of the IPad Mini*........................36

G. *Appellant's due process rights were not violated due to the doctrine of spoliation*............................................. 36-41

*Conclusion and Prayer* ...................................................................42

*Certificate of Compliance* ..............................................................43

*Certificate of Service*.....................................................................44

iv

## NAMES OF ALL PARTIES

1. ATTORNEY FOR THE STATE                                 (at trial)
   Dale S. Hanna
   18th, 249th, 249TH Judicial District
   204 S. Buffalo, Suite 209
   Guinn Justice Center
   Cleburne, Texas 76033

   Bryan Bufkin
   Assistant District Attorney

   Lindsey Lehrmann
   Assistant District Attorney


2. ATTORNEY FOR THE STATE                                (on appeal)
   Dale S. Hanna
   District Attorney
   18th, 249th, 249TH Judicial District
   204 S. Buffalo, Suite 209
   Guinn Justice Center
   Cleburne, Texas 76033

   David W. Vernon
   Assistant District Attorney

3. ATTORNEY FOR APPELLANT
   Patrick Barkman                                      (at trial)
   Attorney at Law
   13 N. Main Street
   Cleburne, Texas  76031

   Jennifer Enright
   Attorney at Law
   300 N. Broadway
   Joshua, TX  76058

4. ATTORNEY FOR APPELLANT                    (on appeal)
   Lane E. Rugeley
   Attorney at Law
   16 N. Caddo Street
   Cleburne, Texas  76031


5. PRESIDING JUDGE                           (at trial)
   Honorable D. Wayne Bridewell
   249TH Judicial District Court
   204 S. Buffalo
   Guinn Justice Center
   Cleburne, Texas 76033


6. APPELLANT
   Constantino Rios Morales
   TDC # 01995563
   James Lynaugh Unit
   1098 S. Highway
   Fort Stockton, TX 79735

## INDEX OF AUTHORITIES

**Cases**                                                                                   **Page**

*Aranda v. State*, 640 S.W. 2d 766
(Tex.App.-San Antonio 1982, *no pet.*)...................................................25

*Becknell v. State*, 720 S.W. 2d 526
(Tex.Crim.App. 1986)...................................................................24

*Blue v. State*, 41 S.W. 3d 129
(Tex.Crim.App. 2000)...................................................................24

*Bowen v. State*, 374 S.W. 3d 427
(Tex.Crim. App. 2012)....................................................................6

*Brooks v. State*, 323 S.W. 3d 893
(Tex.Crim.App. 2010)....................................................................5

*Brown v. State*, 911 S.W. 2d 744
(Tex.Crim.App. 1995)....................................................................7

*Brumit v. State*, 206 S.W. 3d 639
(Tex.Crim.App. 2006)...................................................................23

*California v. Trombetta*, 467 U.S.479 (1984)...........................................33

*Chambers v. State*, 805 S.W. 2d 459
(Tex.Crim.App. 1991)....................................................................5

*Conner v. State*, 67 S.W. 3d 192
(Tex.Crim.App. 2001)....................................................................5

*Davis v. State*, 780 S.W. 2d 945
(Tex.App.-Fort Worth 1989, *pet. ref'd.*),...............................................25

*DeMoss v. State*, 12 S.W. 3d 553
(Tex.App.-San Antonio 1999, *pet. ref'd.*)...............................................34

*Evans v. State*, 202 S.W. 3d 158
(Tex.Crim.App. 2006.).....................................................................7

*Ex parte Little*, 887 S.W. 2d 62
(Tex.Crim.App. 1994)...................................................................23

*Foster v. State*, 101 S.W. 3d 490
(Tex.App.-Houston [1st Dist.] 2002, *no pet.*)..........................................17

*Garner v. State*, 939 S.W. 2d 802
(Tex.App.-Fort Worth 1997, *pet. ref'd.*)...............................................16

*Grant v. State*, 989 S.W. 2d 428
(Tex.App.-Houston [14th Dist.] 1999, *no pet.*)...........................................8

*Guzman v. State*, 995 S.W. 2d 85

(Tex.Crim.App. 1997) ...............................................................31

*Harrison v. State*, 187 S.W. 3d 429
(Tex.Crim.App. 2005) ...............................................................24

*Hawkins v. State*, 135 S.W. 3d 72
(Tex.Crim.App. 2004). ...............................................................23

*Hughen v. State*, 265 S.W. 3d 473
(Tex.App.-Texarkana 2008), *cert. denied*
560 U.S. 911 (2010) ...............................................................16,18

*Jackson v. Virginia*, 443 U.S. 307(1979) ...................................5

*Johnson v. State*, 783 S.W. 2d 19
(Tex.App.-Fort Worth 1990, *pet. ref'd*) ..................................5

*Johnson v. State*, 803 S.W 2d 272
(Tex.Crim.App. 1990). ...............................................................24

*Kim v. State*, 331 S.W. 3d 156
(Tex.App.-Houston [14th Dist.] 2011, *pet. ref'd*). ..................24

*Krause v. State*, 243 S.W. 3d 95
(Tex.App.-Houston [1st Dist.] 2007, *pet. ref'd*). ....................34

*Kutzner v. State*, 994 S.W. 2d 180
(Tex.Crim.App. 1999). ...............................................................5

*Laney v. State*, 117 S.W. 3d 854
(Tex.Crim.App. 2003) ...............................................................32

*Lewis v. State*, 664 S.W. 2d 345
(Tex.Crim.App. 1984). ...............................................................7

*Mahaffey v. State*, 937 S.W. 2d 51
(Tex.App.-Houston [1st Dist.] 1996, *no pet.*)........................33,40

*Malik v. State*, 953 S.W. 2d 234
(Tex.Crim.App. 1997). ...............................................................5,6

*Martinez v. State*, 186 S.W. 3d 59
(Tex.App.-Houston [1st Dist.] 2005, *pet. ref'd*) ...................17,19

*Martinez v. State,* 91 S.W. 3d 331
(Tex.Crim.App. 2002). ...............................................................32

*Matthews v. State*, 431 S.W. 3d 596
(Tex.Crim.App. 2014)...............................................................32,33

*McGoldrick  v. State*, 682 S.W. 2d 573
(Tex.Crim.App. 1985). ...............................................................6

*Moreno v. State*, 195 S.W. 3d 321
(Tex.App.-Houston [14th Dist.] 2006, *pet. ref'd*). ..................7

*Moreno v. State*, 755 S.W. 2d 886

(Tex.Crim.App. 1988) .................................................................. 5

*Oles v. State*, 993 S.W. 2d 103
    (Tex.Crim.App. 1999). ............................................................ 31

*Ostos v. State*, 713 S.W. 2d 402
    (Tex.App.-El Paso 1986, *pet. ref'd.*) ................................... 25

*Palmer v. State*, 857 S.W. 2d 898
    (Tex.App.-Houston [1st Dist.] 1993, *no pet.*). ........................ 7

*Poindexter v. State*, 153 S.W. 3d 402
    (Tex.Crim.App. 2005). ............................................................. 6

*Rezac v. State*, 782 S.W. 2d 869
    (Tex.Crim.App. 1990). ........................................................... 17

*Robinson v. State*, 174 S.W. 3d 320
    (Tex.App. –Houston [1st Dist.] 2005, *pet. ref'd.*) .................. 8

*Sapata v. State*, 574 S.W. 2d 770
    (Tex.Crim.App. 1978). ........................................................... 23

*Silva v. State*, 989 S.W. 2d 64
    (Tex.App.-San Antonio 1998, *pet. ref'd.*). ........................... 16

*Smith v. State*, 638 S.W. 2d 200
    (Tex.App.-Houston [1st Dist.] 1982, *pet. ref'd.-untimely filed*) ........... 23

*Steen v. State*, 640 S.W. 2d 912
    (Tex.Crim.App. 1982) .............................................................. 5

*Strauss v. State*, 121 S.W. 3d 486
    (Tex.App.-Amarillo 2006, *pet. ref'd.*). ................................. 34

*Swearingen v. State*, 101 S.W. 3d 89
    (Tex.Crim.App.2003). ............................................................. 6

*U.S. v. Valenzuela-Bernal*, 458 U.S. 858(1982) ........................... 33

*Wead v. State*, 129 S.W. 3d 126
    (Tex.Crim.App. 2004). ........................................................... 23

*Wilson v. State*, 71 S.W. 3d 346
    (Tex.Crim.App. 2002). ........................................................... 34

**Statutes**

TEX. HEALTH and SAFETY CODE ANN. §481.002 (38) ................... 6,8

TEX. HEALTH and SAFETY CODE ANN. § 481.112 (a). .................... 6

TEX. PENAL CODE ANN. § 6.03(b). ............................................... 8

TEX.R.APP.PROC 33.1 (a)(1) ...................................................... 24

TEX.R.APP.PROC. 33.1 (a)(1)(A). ................................................ 34

TEX. R. EVID. 104(a). ................................................................. 16

TEX.R.EVID.901(a).............................................................................16
TEX.TRANSPORTATION CODE ANN. § 547.323 .....................................38
TEX.TRANSPORTATION CODE ANN. § 547.325 .....................................38
TEX.TRANSPORTATION CODE ANN. § 545.058 .....................................38

IN THE COURT OF APPEALS
FOR THE SIXTH COURT OF APPEALS DISTRICT OF TEXAS
TEXARKANA, TEXAS

CONSTANTINO RIOS MORALES
APPELLANT

VS.

THE STATE OF TEXAS
APPELLEE

STATE'S BRIEF

TO THE HONORABLE COURT OF APPEALS, SIXTH COURT OF APPEALS DISTRICT OF TEXAS:

The State of Texas, by and through her District Attorney, respectfully submits this brief in the above entitled and numbered cause.

*STATEMENT OF THE CASE*

On September 12, 2014, Appellant was indicted for one count of "Possession of Controlled Substance with Intent to Deliver, $\geq 4 < 200$ Grams in a Drug Free Zone" (i.e., Count One).[1] At trial, prior to the reading of the indictment, the State announced that it was not proceeding with the "Drug Free Zone" element.[2] Thereafter, Appellant entered a plea of "not guilty."[3] After hearing all of the evidence, the trial jury found Appellant guilty as charged and sentenced Appellant to 45 years in TDCJ-ID, with a $10,000.00 fine.[4]

---

[1] C.R., p. 14.
[2] R.R. Vol. 11, p. 86.
[3] R.R. Vol. 11, pp. 88, 89.
[4] C.R., pp. 146, 149-154, 159; R.R. Vol. 13, pp. 53, 54; R.R. Vol. 14, pp. 119, 120.

STATEMENT OF FACTS

On the evening of August 31, 2004, Eric Alexander, a patrol officer with the Cleburne Police Department (in Johnson County, Texas), was approaching the downtown intersection of Main Street and Chambers when he noticed a tan, 1999 Chevy Silverado pickup truck in violation of several Transportation Code statutes (i.e., the rear taillights were obscured by spray paint, the passenger side brake light was not working, and the vehicle weaved onto an improved shoulder).[5] After Alexander initiated a traffic stop, the officer identified the driver (the lone occupant of the vehicle) as Constantino Morales (i.e., Appellant).[6] Following this, Alexander placed Appellant under arrest (apparently for having outstanding warrants?) and called for his supervisor (i.e., Officer Shane Wickson) to help with an inventory search.[7] During the search, three similar laptop-type computers were found inside the center console and, in a hidden space underneath the cup holder in the center console, a green pouch was discovered that contained two baggies of methamphetamine (totaling 37.79 grams), digital scales, a small Ziploc-type baggie and $483.00 in cash.[8] Thereafter, Alexander determined that one of the

---

[5] R.R. Vol. 11, pp. 104, 105, 109-111, 115, 117, 171, 173; R.R. Vol. 15, State's Exhibit Nos. 1, 6-12.

[6] R.R. Vol. 11, pp. 110, 111, 113, 115, 117, 118, 174; R.R. Vol. 15, State's Exhibit No. 1.

[7] R.R. Vol. 11, pp. 118, 169, 171, 175, 190.

[8] Id. at 119, 121, 123-125, 127, 130-134, 137, 138, 175, 176, 178, 180; R.R. Vol. 12, pp. 11, 12, 15, 18; R.R. Vol. 15, State's Exhibit Nos. 1-5, 13-20.

2

three laptop computers (i.e., an IPad Mini) was stolen.[9]   As a result of the contraband discovered in Appellant's vehicle, he was indicted on September 12, 2004, for one count of "Possession of Controlled Substance with Intent to Deliver, $\geq 4 < 200$ Grams, in a Drug Free Zone."[10]

---

[9] R.R. Vol. 11, pp. 119, 121, 163-167, 177, 182, 183, 202.
[10] C.R., p. 14.

REPLY TO APPELLANT'S
ISSUE NUMBER ONE:                    *The evidence was sufficient to support*
                                     *Appellant's conviction in Count One.*


In Appellant's Issue Number One, he argues that the evidence was insufficient to support his conviction in Count One. Specifically Appellant claims the State failed to establish that he possessed (i.e., exercised care, custody, control, or management) the methamphetamine found in the vehicle that he was driving or, if he did, that his intent was to deliver this drug to others. The State of Texas respectfully disagrees.

## ISSUES PRESENTED

### ONE

Was the evidence sufficient in Count One to support the jury's finding that Appellant intentionally or knowingly possessed methamphetamine with the intent to deliver?


## SUMMARY OF THE ARGUMENT

The record supports Appellant's conviction in Count One and the jury's finding that Appellant possessed $\geq 4 < 200$ grams of methamphetamine with the intent to deliver. At trial, evidence was adduced that: (1) Appellant was the owner of the pickup truck in which the contraband was found; (2) he was the driver and sole occupant of the truck; (3) Appellant had easy access to the contraband (i.e., the methamphetamine and drug paraphernalia were discovered in a hidden compartment in the center console next to the driver's seat); (4) a significant amount of cash ($483.00) was also discovered in the vehicle; (5) a local drug dealer (i.e., Martha Manzo) testified that Appellant was her source and, after Appellant was arrested, that Appellant called her to say that he had a large amount of drug in his truck when he was stopped by the police; (6) a similar admission was heard on a taped phone call made by Appellant to his ex-wife (i.e., Celeste Cooley); and that the DPS Crime Lab in Waco analyzed the drug exhibits and determined them to be 37.79 grams of methamphetamine.

A.    *Standard of review concerning the sufficiency of the evidence to convict.*

4

In reviewing the sufficiency of the evidence, the appellate court must view the evidence in the light most favorable to the verdict (i.e., the prosecution) and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[11]   In conducting such a review, a reviewing court must remember that the jury is the sole fact-finder and is charged with the duty of judging the credibility of the witnesses, reconciling conflicts in testimony, and accepting or rejecting any or all of the evidence on either side.[12] The jury is also allowed to draw reasonable inferences from basic facts to ultimate facts.[13]  A verdict will be sustained if there is any evidence that, if believed, shows the guilt of the defendant.[14]   All evidence, whether properly or improperly admitted, will be considered when reviewing the evidence for sufficiency.[15]  The standard of review is the same for direct or circumstantial evidence cases.[16]

The sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge for the case.[17]  The standard of sufficiency ensures that a judgment of acquittal is reversed for those

---

[11] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W. 3d 893 Tex.Crim.App. 2010) (The *Jackson* standard of review is the sole standard to be used for challenges to the sufficiency of the evidence).

[12] *Chambers v. State*, 805 S.W. 2d 459, 461 (Tex.Crim.App. 1991).

[13] *Jackson v. Virginia*, 443 U.S. at 319; *Johnson v. State*, 783 S.W. 2d 19, 20 (Tex.App.-Fort Worth 1990, *pet. ref'd*.).

[14] *Moreno v. State*, 755 S.W. 2d 886, 887 (Tex.Crim.App. 1988); *Steen v. State*, 640 S.W. 2d 912, 914 (Tex.Crim.App. 1982).

[15] *Conner v. State*, 67 S.W. 3d 192, 197 (Tex.Crim.App. 2001).

[16] *Kutzner v. State*, 994 S.W. 2d 180, 184 (Tex.Crim.App. 1999).

[17] *Malik v. State*, 953 S.W. 2d 234, 240 (Tex.Crim.App. 1997).

situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted.[18]

If a criminal case is reversed for sufficiency, the judgment is reformed to reflect a conviction for a lesser offense—regardless if the jury charge on the lesser offense was either submitted or requested, but denied.[19] Otherwise a reviewing court vacates the judgment of conviction for insufficiency and orders a judgment of acquittal.[20]

B.      *Relevant law concerning possession of a controlled substance.*

To meet its burden of proof that the defendant knowingly possessed a controlled substance, the State is required to demonstrate that the defendant (1) exercised control, management, or care over the substance and (2) knew the matter possessed was contraband.[21] "Possession" means actual care, custody, control, or management of an item.[22]

The knowledge element of the crime of possession, being subjective, must always be inferred to some extent, in the absence of an admission by the accused.[23] To prove knowing possession, the State must present evidence that affirmatively

---

[18] *Id.*
[19] *Bowen v. State*, 374 S.W. 3d 427, 432 (Tex.Crim. App. 2012).
[20] *Swearingen v. State*, 101 S.W. 3d 89, 97 (Tex.Crim.App.2003).
[21] *Poindexter v. State*, 153 S.W. 3d 402, 405 (Tex.Crim.App. 2005). *See also,* TEX. HEALTH and SAFETY CODE ANN. § 481.112(a).
[22] TEX. HEALTH and SAFETY CODE ANN. § 481.002 (38).
[23] *McGoldrick  v. State*, 682 S.W. 2d 573, 578 (Tex.Crim.App. 1985).

links the defendant to the controlled substance.[24] This evidence may be direct or circumstantial.[25] Regardless whether the evidence is direct or circumstantial, it must establish that the defendant's conviction with the drug was more than fortuitous.[26]

To prove that an accused possessed a controlled substance *with an intent to deliver*, the State can use circumstantial evidence.[27] Factors that courts have considered include: (1) the nature of the location at which the accused was arrested; (2) the quantity of contraband in the accused's possession; (3) the manner of packaging; (4) the presence or lack thereof of drug paraphernalia (for either use or sale); and (5) the accused's status as a drug user.[28] The number of factors present is not as important as the logical force the factors have in establishing the elements of the offense.[29] An oral expression of intent is not required.[30] Intent can be inferred from the acts, words, and conduct of the accused.[31] Expert testimony by experienced law enforcement officers may be used to establish an accused's intent to deliver.[32]

---

[24] *Palmer v. State*, 857 S.W. 2d 898, 900 (Tex.App.-Houston [1st Dist.] 1993, *no pet.*).
[25] *Brown v. State*, 911 S.W. 2d 744, 747 (Tex.Crim.App. 1995).
[26] *Evans v. State*, 202 S.W. 3d 158, 161 (Tex.Crim.App. 2006.).
[27] *Moreno v. State*, 195 S.W. 3d 321, 325 (Tex.App.-Houston [14th Dist.] 2006, *pet. ref'd.*).
[28] *Id.*, *citing*, *Lewis v. State*, 664 S.W. 2d 345, 349 (Tex.Crim.App. 1984).
[29] *Id.* at 326.
[30] *Id.*
[31] *Id.*
[32] *Id.*

C.      *The evidence was sufficient to establish that Appellant knowingly possessed the methamphetamine.*

The State would first argue that the evidence was sufficient to support the jury's finding that Appellant knowingly possessed the methamphetamine discovered inside the Chevy Silverado pickup truck in which Appellant was driving.  As stated in the jury charge, a person acts knowingly or with knowledge with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct.[33]  And, "possession" means actual care, custody, control, or management of an item.[34]  Thus, given the facts of the case *sub judice*, the State would have to show that (1) Appellant was aware that the methamphetamine was inside the vehicle and (2) he exercised care, custody, control, or management over this drug.

Knowledge of the presence of contraband may be inferred from the accused's control over the vehicle in which the contraband is concealed.[35]  Control over the vehicle can be shown by the accused being the sole occupant of the vehicle.[36]  It may also be shown by evidence that the accused owned the vehicle.[37]

Here, the record reflects that the methamphetamine was discovered in the center console of a vehicle in which Appellant was not only the sole occupant of

---

[33] C.R., p. 142; R.R. Vol. 13, p. 9.  *See also*, TEX. PENAL CODE ANN. § 6.03(b).
[34] TEX. HEALTH and SAFETY CODE ANN. § 481.002 (38).
[35] *Grant v. State*, 989 S.W. 2d 428, 433 (Tex.App.-Houston [14th Dist.] 1999, *no pet.*).
[36] *Id.*
[37] *Robinson v. State*, 174 S.W. 3d 320, 325 (Tex.App. –Houston [1st Dist.] 2005, *pet. ref'd*).

the vehicle, but also the driver.[38]  The record also reflects that Appellant was the owner of the vehicle.  Rene Ozuna, a salesman at Dugger Motor Company in Cleburne, Texas testified that the vehicle (a tan, 1999 Chevy Silverado pickup truck,) was first sold to Mr. Eric Mills and that a "Mexican guy" bought if from Mills (i.e., took over the payments).[39]  Mills testified that he sold the vehicle to Appellant (a person with a Spanish surname) and then identified Appellant in court as the person to whom he sold the Silverado pickup truck.[40]  And, Martha Manzo (an acquaintance of Appellant's) testified that Appellant was the owner of the truck, that he had purchased it about a month before his August 31, 2014 arrest, and that he had spray painted the taillights (one of the reasons for Officer Alexander's traffic stop).[41]  Thus, a rational jury could have found beyond a reasonable doubt that Appellant had knowledge of the methamphetamine found inside the Silverado pickup truck.

A rational jury could also have found beyond a reasonable doubt that Appellant possessed the methamphetamine.  In addition to the aforementioned affirmative links, the record reflects that the contraband was secreted in a hiding space within the center console which was within easy access of Appellant.[42]

---

[38] R.R. Vol. 11, pp. 117, 118, 174; R.R. Vol. 15, State's Exhibit No. 1.
[39] R.R. Vol. 12, pp. 188, 191, 193.
[40] *Id*. at 65.
[41] *Id*. at 58, 65, 66, 107, 108.
[42] R.R. Vol. 11, pp. 121-125, 130, 137, 138; R.R. Vol. 15, State's Exhibit Nos. 1-5, 13, 19, 20.

Also, drug paraphernalia (i.e., a glass pipe, a small Ziploc baggie, and digital scales were found with the methamphetamine along with a significant amount of cash—$483.00).[43] Moreover, Manzo testified that she was a local dealer of methamphetamine, that Appellant was her source, that he had told her just prior to his arrest that he was going to purchase some methamphetamine, and that he called her after the arrest and stated that he had a large amount of methamphetamine in the truck when he was arrested.[44] Such an admission is also on a taped telephone call (presumably made from the county jail) between Appellant and his ex-wife (i.e., Celeste Cooley).[45] Therefore, the evidence was sufficient to establish that Appellant knowingly possessed the methamphetamine found in the Chevy Silverado pickup truck.

D.    *The evidence was sufficient to establish that Appellant possessed the methamphetamine with the intent to deliver.*

The State would also argue that the evidence was sufficient to establish that Appellant's possession of the methamphetamine was done with the intent to deliver. Using the aforementioned factors, the State would first note that Appellant was found with a large amount of methamphetamine (i.e., 37.79 grams).[46] Both Alexander and Wickson testified that this was by far the largest amount of

---

[43] R.R. Vol. 11, pp. 124, 125, 127, 130-134, 151, 178, 180; R.R. Vol. 15, State's Exhibit Nos. 1, 13, 15-17.
[44] R.R. Vol. 12, pp. 58, 59, 66-70.
[45] *Id*. at 80, 101-103, 111-113, 138, 139, 146-148, 150; R.R. Vol. 15, State's Exhibit Nos. 22, 26.
[46] R.R. Vol. 11, pp. 138, 178; R.R. Vol. 12, p. 18; R.R. Vol. 15, State's Exhibit No. 20.

10

methamphetamine that they had ever encountered on a traffic stop.[47]   And, Adam King (i.e, the commander of the STOP Task Force) testified as an expert witness that most users only consume a quarter of one gram at a time, that much more than that amount would likely be fatal, and that 37.79 grams indicated an intent to deliver.[48]   In addition, King testified that the drug paraphernalia found with the methamphetamine (i.e., a glass pipe, digital scales, and small baggie) and the $483.00 further indicated that Appellant had the intent to deliver the methamphetamine.[49]   And, King, Alexander, and Wickson all testified that the presence of the stolen IPad Mini suggested that Appellant was a dealer (noting that dealers commonly trade drugs for stolen merchandise such as electronics).[50] Moreover, as previously mentioned, Manzo testified that she was a local dealer of methamphetamine, that Appellant was her supplier, and that just prior to his arrest Appellant had stated that he was going to purchase some methamphetamine.[51] Consequently, a rational trier of fact could also have found beyond a reasonable doubt that the methamphetamine was not for Appellant's personal use, but that he possessed it with the intent to deliver.  Therefore, for the reasons stated above, the evidence was sufficient to support Appellant's conviction in Count One.

---

[47] R.R. Vol. 11, pp. 108, 109, 138, 178, 179.
[48] R.R. Vol. 12, pp. 165-167, 172.
[49] *Id*. at 165, 170.
[50] R.R. Vol. 11, pp. 119, 121, 175-177, 182, 183, 202; R.R. Vol. 12, pp. 170, 171.
[51] R.R. Vol. 12, pp. 58, 59, 66-70.

Accordingly, Appellant's Issue Number One should be overruled.

REPLY TO APPELLANT'S
ISSUE NUMBER TWO:                    *The trial judge remained a neutral arbiter and did not deny Appellant a fair and impartial trial.*

In Appellant's Issue Number Two, he argues that the trial judge denied him his due process rights when, in guilt/innocence, the judge ceased to be a neutral arbiter and became a prosecutor involved in the fray. Specifically, Appellant claims that after the judge admitted the lab results, it was error for him to then pose a question to both sides (outside the presence of the jury) whether the State had fully proven the chain of custody. The State of Texas respectfully disagrees.

## ISSUES PRESENTED
### ONE

When the objection on appeal fails to comport with the objection lodged at trial, has Appellant preserved his issue for appellate review?

### TWO

If the trial judge has plenary power to reconsider an interlocutory ruling made during trial, is it error for the judge to take a recess and ask both sides to research if the ruling was correct?

### THREE

If an alleged error by the trial court inures to the benefit of Appellant, is the error reversible?

## SUMMARY OF ARGUMENT

Appellant failed to preserve his issue for appellate review because his argument on appeal does not comport with the objection lodged at trial. In addition, the trial court's post-ruling pondering as to whether or not the chain of custody was proven was not error because the court retains plenary power during trial to reconsider an interlocutory ruling. Finally, Appellant cannot claim that the alleged error was reversible because the benefit of the ruling inured to Appellant (i.e., the prosecution went to the unnecessary steps to fill in the chain of custody gaps).

13

A.    *Relevant facts.*

In guilt/innocence, the State, having established the first leg in the chain of custody for the drug exhibits (i.e., from their discovery by law enforcement to their transfer to the Cleburne Police Department property room), called James Milam (a forensic scientist at the Texas Department of Public Service Crime Lab in Waco) to testify about the results of his analysis of said exhibits.[52]  Testifying as to the last step of the chain of custody, Milam explained that the two drug exhibits (contained in an envelope marked as State's Exhibit No. 19) both exhibited the unique lab number, the case and exhibit number, the date of resealing, and his initials.[53]  Milam next stated that he personally performed the lab analysis on both drug exhibits.[54]  At this point, State's Exhibit No. 19 was offered and admitted without any objection by defense counsel.[55]  Milam, who was then shown State's Exhibit No. 20 (i.e., the lab report), testified that the report accurately reflected the results of his analysis and carried the same unique lab number as State's Exhibit No. 19.[56] The State then offered its Exhibit No. 20 which, like No. 19, was also admitted without any objection by defense counsel.[57]  Then, after his cross-examination of Milam, defense counsel (with agreement by the prosecution) stated that he had no

---

[52] R.R. Vol. 11, pp. 129-132, 134-137, 141, 142.
[53] R.R. Vol. 12, pp. 11, 12, 14, 15.
[54] *Id*. at 15.
[55] *Id*.
[56] *Id*. at 16, 17.
[57] *Id*. at 17, 18.

14

objection to the court excusing Milam.[58]  The court responded by having the bailiff take the jury out of the courtroom for a 15 minute break.[59]

During the break, the trial court (apparently having some confusion as to whether chain of custody was properly proven) asked Milam to remain seated and suggested that it might be a good idea for both sides to use the break to research the issue.[60]  At the end of the break (and before the jury was brought back into the courtroom), defense counsel approached the bench and lodged two objections — (1) that the chain of custody was not proven as to State's Exhibit No. 19 and (2) that the trial court's statements during the recess about whether the prosecution had met the chain of custody requirement was an impermissible comment on the weight of evidence.[61]  Defense counsel then asked for a mistrial.[62]  In response, the State argued that it had proven chain of custody by showing the first and last leg and that the gaps in between went to the weight of the evidence and not its admissibility.[63]  The prosecution then reminded the trial judge that defense counsel failed to object to the admission of State's Exhibit No. 19 and argued that a

---

[58] *Id*. at 18, 19.
[59] *Id*. at 19.
[60] *Id*. at 19, 20.
[61] *Id*. at 21.
[62] *Id*.
[63] *Id*. at 21, 22.

mistrial was not warranted.[64]  The trial judge then overruled defense counsel's objections and denied his motion for mistrial.[65]

B.      *Relevant law and standard of review.*

While it is true that a defendant has a due process right to a fair trial before a fair tribunal, the trial court has plenary jurisdiction to reconsider its interlocutory rulings, and retains that ability, until a final judgment or order is entered in the cause and the decree becomes final without violating this due-process right.[66] Such interlocutory rulings involve preliminary questions concerning the admissibility of evidence.[67]

TEX. R. EVID. 901(a) provides that, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  This rule does not require the State to prove anything.[68]  Instead, it requires only a showing that satisfies the trial court that the matter in question is what the State claims; once that showing is made, the exhibit is admissible.[69]  The State meets the authentication requirement for admissibility once it "has shown the beginning and the end of the chain of custody, particularly when the chain ends at

---

[64] *Id*. at 22.
[65] *Id*. at 22, 23.
[66] *Hughen v. State*, 265 S.W. 3d 473, 479-480, 482 (Tex.App.-Texarkana 2008), *cert. denied*, 560 U.S. 911 (2010).
[67] TEX. R. EVID. 104(a).
[68] *Silva v. State*, 989 S.W. 2d 64, 67-68 (Tex.App.-San Antonio 1998, *pet. ref'd*.).
[69] *Garner v. State*, 939 S.W. 2d 802, 805 (Tex.App.-Fort Worth 1997, *pet. ref'd*.).

16

a laboratory. Any gaps and minor theoretical breaches go to the weight rather than the admissibility of the evidence, absence a showing of tampering."[70]

The trial court has discretion to determine the sufficiency of the predicate of authentication and, absent an abuse of discretion, the trial court's judgment will not be reversed on appeal.[71]

C.   *Appellant failed to preserve his issue for appellate review.*

The State would first argue that Appellant has failed to preserve his issue for appellate review. It is well settled that to preserve error on appeal, an objection raised on appeal must comport with the objection lodged at trial.[72] Here, Appellant complains an appeal that his due process rights were violated by the complained-of comments by the trial judge because in making them, the judge became an advocate for the prosecution. At trial, however, defense counsel's objections were that the prosecution had not proven up the chain of custody concerning State's Exhibit No. 19 and that the judge's remarks constituted an impermissible comment on the weight of the evidence.[73] Consequently, Appellant has not preserved his issue for appellate review.

D.   *The trial court's remarks did not violate Appellant's due-process rights to a fair and impartial trial.*

---

[70]*Martinez v. State*, 186 S.W. 3d 59, 62 (Tex.App.-Houston [1st Dist.] 2005, *pet. ref'd.*).
[71] *Foster v. State*, 101 S.W. 3d 490, 498 (Tex.App.-Houston [1st Dist.] 2002, *no pet.*).
[72] *Rezac v. State*, 782 S.W. 2d 869, 870 (Tex.Crim.App. 1990).
[73] R.R. Vol. 12, p. 21 (ls. 1-10).

17

In addition to Appellant having failed to preserve his issue for appellate review, the State would next argue that the trial court's remarks did not violate Appellant's due-process rights to a fair and impartial trial. Caselaw holds that a trial court has plenary jurisdiction to reconsider its interlocutory rulings and retains that ability until a final judgment or order is entered in the cause and the decree becomes final.[74] This enhances the fairness of a trial by giving the trial court an opportunity to correct error in its rulings. For this reason, such reconsideration does not deny a defendant due process of law.[75]

Here, although the trial court had correctly ruled that State's Exhibit Nos. 19 and 20 (i.e., the lab report) were admissible (i.e., they were properly authenticated when the first and last links of the chain of custody were shown), the trial court, having second thoughts about the admissibility requirements, merely suggested that both sides review the law on this issue during a 15 minute recess. This precautionary action resulted in the trial court being reassured that it had made the correct ruling in its admission of these exhibits. Consequently, the trial court's action of reconsidering its ruling did not deny Appellant his due-process rights.

E.    *Harmless error.*

In the event that the trial court's reconsideration of its ruling (i.e., the admission of State's Exhibit Nos. 19 and 20) was error, the State would argue that

---

[74] *Hughen*, 265 S.W. 3d at 479.
[75] *Id*. at 482.

Appellant was not harmed. First, the trial court was correct in admitting these exhibits. As previously stated, the authentication requirement for admissibility is met once the State has shown the beginning and end of the chain of custody, particularly when the chain ends at a laboratory.[76] Any gaps and minor theoretical breaches go to the weight of rather than the admissibility of the evidence, absent a showing of tampering.[77]

Here, Officer Alexander testified that he packaged the evidence recovered from the inventory search, sealed them, put a case number and his name on each package, and delivered them to the property room.[78] Later at trial, James Milam, the forensic scientist for the DPS lab in Waco who analyzed the drug exhibits, testified that he recognized the two drug exhibits inside the envelope marked as State's Exhibit No. 19, that the bags had identification markings on them (i.e., the law enforcement case number, date that Milam resealed the bags, and the unique lab exhibit number assigned to the bags) and that they showed no signs of tampering prior to his analysis.[79] Thus, the trial court did not err in admitting the drug exhibits (and the analysis of them) because the beginning and end of the chain of custody was shown.

---

[76] *Martinez*, 186 S.W. 3d at 62.
[77] *Id.*
[78] R.R. Vol. 11, pp. 129-132, 134-137, 141, 142; R. R. Vol. 15, State's Exhibit Nos. 14-19.
[79] R.R. Vol. 12, pp. 14, 15.

19

Secondly, the trial court's ruling on the admissibility of the drug exhibits and lab report was not affected by its suggestion that both sides do some legal research on the issue of authentication and chain of custody. The record reflects that at the end of the 15 minute recess, the State instructed the court concerning the law on chain of custody and how it supported his ruling.[80] Thereafter, the court overruled defense counsel's untimely objection concerning the chain of custody and let its ruling stand.[81] Consequently, Appellant's due-process rights were not violated by the trial court's proper ruling on the admissibility of State's Exhibit Nos. 19 and 20.

Finally, any benefit from the trial court's reconsideration of its ruling inured to Appellant. As a result of the trial court's suggestion that the issue of authentication and chain of custody be researched, the State decided to take the unnecessary step of having Milam fill in the gaps of chain of custody. Following the recess, Milam testified that State's Exhibit Nos. 19 and 20 were delivered to the lab by Sam Thomas of the Cleburne Police Department, that these exhibits were received by Kristina Aguirre (an evidence tech at the lab), that Aguirre placed the exhibits in the return vault, that evidence tech Sandra Cull took the exhibits and placed them in the drug vault, and that he retrieved the exhibits from the drug vault

---

[80] *Id*. at 21, 22.
[81] *Id*. at 22.

for testing.[82] Milam then testified that after his analysis, his supervisor (i.e., Araceli Utmore) reworked the analysis, that Utmore returned the exhibits to the drug vault, that the exhibits were thereafter transferred to the return vault before Cull retrieved them and gave them back to Thomas.[83] As such, Appellant received the benefit of the State demonstrating far more of the chain of custody than the law requires. Therefore, Appellant was not harmed by the trial court's act of reconsideration.

Accordingly, for the reasons stated above, Appellant's Issue Number Two should be overruled.

---

[82] *Id*. at 24, 25.
[83] *Id*. at 25.

REPLY TO APPELLANT'S
ISSUE NUMBER THREE:                    *The trial court properly denied*
                                       *Appellant's motion for mistrial.*

In Appellant's Issue Number Three, he argues that the trial court reversibly erred during guilt/innocence when it denied his motion for mistrial regarding the trial court's remarks made outside the presence of the jury, (i.e., about whether the State had met the authentication requirements to show chain of custody for State's Exhibit Nos. 19 and 20). Specifically, Appellant maintains that these remarks constituted an impermissible comment on the weight of the evidence in violation of Art. 38.05 V.A.C.C.P.

## ISSUES PRESENTED

### ONE

If Appellant failed to lodge a timely objection following the alleged improper comment on the weight of the evidence by the trial court, has he preserved error for appellate review?

### TWO

If complained-of remarks by the trial court were made outside the presence of the jury and did not impermissibly comment on the weight of the evidence (i.e., did not imply approval of the State's argument, did not indicate a disbelief in the defense's position, and did not diminish the credibility of the defense's approach to the case), does the trial court abuse its discretion in denying Appellant's motion for mistrial?

## SUMMARY OF ARGUMENT

Appellant failed to preserve his issue on appeal (i.e., that the complained-of statements made by the trial court constituted an impermissible comment on the weight of the evidence). In addition, the complained –of remarks did not constitute an impermissible comment on the weight of the evidence because (1) they were made outside the presence of the jury and, as such, could not have affected their verdict and (2) they neither implied approval of the State's argument, indicate any disbelief on the defense's position, or diminished the credibility of the defense's approach to the case. As such, the trial court did not abuse its discretion in denying Appellant's motion for mistrial.

22

A.    *Relevant facts.*

The State wishes to incorporate Subsection A (i.e., "Relevant facts") of its Reply to Appellant's Issue Number Two herein for purposes of showing the relevant facts surrounding Appellant's Issue Number Three.

B.    *Relevant law and standard of review.*

1.    *Motions for mistrial*

The decision to grant or deny a motion for mistrial is within the discretion of the trial court, which was broad power to deal with unexpected situations occurring during trial.[84] The trial court's denial of a motion for mistrial is reviewed under an abuse of discretion standard.[85] A trial judge abuses his discretion by granting a mistrial when less dramatic alternatives were available.[86] The trial court's denial of a motion for mistrial must be upheld as long as the ruling is within the zone of reasonable disagreement.[87]

2.    *Impermissible comments by trial court on the weight of the evidence.*

Due process requires a neutral and detached judge.[88] Art 38.05 V.A.C.C.P. states that a trial judge shall not, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion

---

[84] *Smith v. State*, 638 S.W. 2d 200, 202 (Tex.App.-Houston [1st Dist.] 1982, *pet. ref'd.-untimely filed*), *citing, Sapata v. State*, 574 S.W. 2d 770 (Tex.Crim.App. 1978).
[85] *Hawkins v. State*, 135 S.W. 3d 72, 76-77 (Tex.Crim.App. 2004).
[86] *Ex parte Little*, 887 S.W. 2d 62, 66 (Tex.Crim.App. 1994).
[87] *Wead v. State*, 129 S.W. 3d 126, 129 (Tex.Crim.App. 2004).
[88] *Brumit v. State*, 206 S.W. 3d 639, 644-45 (Tex.Crim.App. 2006).

23

of the case. To constitute reversible error, the comment must be reasonably calculated to benefit the State or to prejudice the rights of the defendant.[89] A trial court's comment does so if it (1) implies approval of the State's argument, (2) indicates any disbelief in the defense's position, or (3) diminishes the credibility of the defense's approach to the case.[90]

## C. *Appellant failed to preserve his issue for appellate review.*

The State would first argue that Appellant has failed to preserve his issue for appellate review. Normally, to preserve error for review, an appellant must make a timely, specific objection and obtain an adverse ruling.[91] An objection is timely if the party objects as soon as the ground for objection becomes apparent.[92] Failure to object to an Art. 38.05 violation waives the issue for appellate review unless the comment is so egregious that it constitutes fundamental, constitutional error.[93]

Here, the record reflects that Appellate lodged no objection to the complained-of remark by the trial court when, after excusing the jury for a 15 minute recess, it wondered if the prosecution had shown the requisite chain of custody concerning the already admitted State's Exhibit Nos. 19 and 20.[94] At this

---

[89] *Becknell v. State*, 720 S.W. 2d 526, 531 (Tex.Crim.App. 1986).
[90] *Kim v. State*, 331 S.W. 3d 156, 160 (Tex.App.-Houston [14th Dist.] 2011, *pet. ref'd.*).
[91] *Harrison v. State*, 187 S.W. 3d 429, 433 (Tex.Crim.App. 2005); TEX. R. APP. PROC. 33.01(a); TEX. R. EVID. 103(a)(1).
[92] *Johnson v. State*, 803 S.W 2d 272, 291 (Tex.Crim.App. 1990).
[93] *Blue v. State*, 41 S.W. 3d 129, 132-33 (Tex.Crim.App. 2000).
[94] R.R. Vol. 12, p. 19.

point, defense counsel lodged no objection.[95] Only upon returning from the recess did defense counsel raise his objections (i.e., that the State failed to show the chain of custody for State's Exhibit No. 19 and that the trial court's remarks were a comment on the weight of the evidence). As such, Appellant's objection was not timely. Moreover, for reasons stated in Paragraph D of the State's Response to Appellant's Issue Number Two and Paragraph D of the State's Response to Appellant's Issue Number Three, the complained-of remarks were not egregious and did not constitute fundamental or constitutional error. Consequently, Appellant has failed to preserve his Issue Number Three for appellate review.

D.    *No abuse of discretion.*

In the alternative that Appellant preserved his issue for appellate review, the State would next argue that the trial court did not abuse its discretion in denying Appellant's motion for mistrial because the complained-of remarks did not constitute an impermissible comment on the weight of the evidence. First, to run afoul of Art. 38.05, the complained-of comments must have been made in front of the jury.[96] Otherwise, the complained-of comments could not have affected the jury's verdict.[97] Here, the complained-of remarks were made after the judge had

---

[95] *Id.* at 19, 20.

[96] *Davis v. State*, 780 S.W. 2d 945, 949-50 (Tex.App.-Fort Worth 1989), *pet. ref'd.*), *citing, Ostos v. State*, 713 S.W. 2d 402, 403 (Tex.App.-El Paso 1986, *pet. ref'd.*); *Aranda v. State*, 640 S.W. 2d 766, 774 (Tex.App.-San Antonio 1982, *no pet.*).

[97] *Id.*

called for a 15 minute recess and after the bailiff had escorted the jury outside of the courtroom.[98] Secondly, the complained-of comments reflected (1) the trial court's confusion as to whether the State had properly authenticated its Exhibit Nos. 19 and 20 (i.e., by showing the requisite chain of custody) and (2) the court's desire to make sure its ruling (i.e., the admitting of these exhibits) was correct. Contrary to Appellant's assertions, the court's comments were not calculated to benefit the State or prejudice Appellant in any way. Moreover, they did not imply approval of an argument by State, they did not indicate a disbelief in the defense's position, and they did not diminish the credibility of the defense's approach to the case. Consequently, the trial court's comments did not offend Art. 38.05. Therefore, the trial court did not abuse its discretion by denying Appellant's motion for mistrial.

Accordingly, for the reasons stated above, Appellant's Issue Number Three should be overruled.

---

[98] R.R. Vol. 12, pp. 19, 20.

REPLY TO APPELLANT'S
ISSUE NUMBER FOUR:                    *The trial court did not err in denying*
                                       *Appellant's motion to suppress.*


In Appellant's Issue Number Four, he argues that the trial court erred in denying his motion to suppress. Specifically, Appellant claims that : (1) there was no evidence showing that he was arrested (warranting an inventory search of his vehicle); (2) there was no evidence showing the Cleburne Police Department inventory search procedure; (3) there was no evidence that Officers Alexander and Wickson used an inventory sheet during the search of Appellant's vehicle; (4) the search of the IPad Mini laptop computer was not based on probable cause and was conducted without a warrant; (5) there was no evidence that he was arrested on outstanding warrants prior to the inventory search; and (6) that the State violated his due process rights under the doctrine of spoliation (i.e., the police released his vehicle to a towing service which he had the result of preventing him from later examining the vehicle for favorable and material evidence). The State of Texas respectfully disagrees.


## ISSUES PRESENTED

### ONE

If four of the six claims raised by Appellant in his Issue Number Four do not comport with the objections raised at his suppression hearing, has Appellant preserved these four claims for appellate review?

### TWO

If Appellant has no property or possessory interest in the stolen IPad Mini, did he have standing to challenge Officer Wickson's search of this laptop?

### THREE

If Appellant cannot establish (1) that the complained-of evidence was lost or destroyed, (2) that his vehicle contained favorable and material evidence and (3) that law enforcement released the vehicle to a towing service in bad faith, has his due process rights been violated under the doctrine of spoliation?

## SUMMARY OF ARGUMENT

Four of the six claims raised by Appellant in this Issue Number Four were not preserved for appellate review because they do not comport with the objections lodged at the suppression hearing. Of the remaining issues, (i.e., the alleged illegal search of the IPad Mini found in the center console of Appellant's vehicle and the violation of his due process rights due to the doctrine of spoliation), Appellant lacks standing to challenge the search of the IPad because it was stolen and Appellant cannot meet the requirements of spoliation (i.e., proving that (1) evidence was lost or destroyed, (2) the evidence had exculpatory and material value, and (3) that its destruction was the result of bad faith on the part of law enforcement).

A.     *Relevant facts.*

On March 4, 2015, defense counsel filed a motion to suppress which alleged, in relevant part, the following: "the actions of the Cleburne Police Department violated the constitutional and statutory rights of the Defendant under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Section 9 of the Texas Constitution, and Article 38.23 of the Texas Code of Criminal Procedure", and "Any tangible evidence seized in connection with a 1999 Tan Chevrolet Sierra, VIN# 2GCEK19VXX1261302, Plate #DNZ7036, was seized without probable cause or other lawful authority in violation of the rights of Constantino Morales pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10 and 19 of the Constitution of the State of Texas."[99]

---

[99] C.R., pp. 80, 81.

28

The relief sought by defense counsel in said motion was, in relevant part, the suppression at trial in this cause of "[A]ny and all tangible evidence seized by law enforcement officers or others in connection with the detention and arrest of Constantino Morales in this case or in connection with the investigation of this case, including but not limited to any items seized from a 1999 Tan Chevrolet Sierra, VIN# 2GCEK19VXX1261302, plate # DNZ7036, and any testimony by the Cleburne Police Department or any other law enforcement officers or others concerning such evidence."[100]

At the beginning of the suppression hearing, held on April 14, 2015, defense counsel stipulated that Appellant was arrested on outstanding warrants and then announced that he was proceeding under the doctrine of spoliation.[101] According to defense counsel, the releasing of Appellant's vehicle by the Cleburne Police Department to a towing service (1) prevented him from verifying Officers Alexander's and Wickson's offense report (and expected testimony) that the vehicle's tail lamp assembly (including reflectors) was obscured by spray paint and (2) theoretically rendered useless (through likely contamination) any fingerprints that were later obtained from the inside of the center console by CPD.[102] For these reasons, defense counsel claimed that he was prevented from challenging the

---

[100] *Id*. at 81.
[101] R.R. Vol. 11, pp. 1, 6, 7.
[102] *Id*. at 7-10.

29

legality of the stop and/or allegations that Appellant had contact with the hidden compartment inside the center console.[103] In response, the prosecution stated that it had located the vehicle, that it was still in Cleburne, and that defense counsel could go inspect it if he so chose.[104]

Following the presentment of evidence, defense counsel, in his closing argument, reurged the issue of spoliation, but also indicated that the $483.00 cash discovered in the vehicle should not be admitted under TEX.R.EVID 403 and that the information gleamed from Wickson's search of the IPad Mini should be suppressed because, citing *Riley v. California*, it was conducted without a warrant.[105]

In its response, the State, citing TEX. TRANSPORTATION CODE ANN. §§'s 547.323, 547.325, 545.058, and *Dietiker v. State*, 345 S.W. 3d 422 (Tex.App-Waco 2011), summed up the evidence that supported the legality of Alexander's traffic stop, argued that defense counsel had failed to meet the requirements of proving spoliation (i.e., there was no showing of evidence being destroyed that was material and exculpatory and no showing of bad faith or part of law enforcement), challenged defense counsel's assertion that the probative value of the cash was substantially outweighed by the danger of unfair prejudice to Appellant, and

---

[103] *Id.*
[104] *Id.* at 11.
[105] *Id.* at 72-77.

30

pointed out that Appellant had no standing to challenge Wickson's search of the stolen IPad Mini.[106] Having heard arguments from both sides, the trial court denied the motion to suppress.[107]

B.    *Standard of review -trial court's ruling on a motion to suppress.*

On appeal, a trial court's ruling on a motion to suppress is generally reviewed on appeal for an abuse of discretion.[108] The process for such a review was articulated by the Court of Criminal Appeals in *Guzman v. State*.[109] Using a bifurcated standard of review, almost total deference is given to a trial court's determination of historical facts—especially when the trial court's findings are based on an evaluation of credibility and demeanor.[110] The same amount of deference is given to the trial court's ruling on application of law-to-fact questions if the resolution of those questions turn on an evaluation of credibility and demeanor.[111] Applications of law-to-fact question that do not turn on the evaluation of credibility and demeanor of witness testimony at the suppression hearing, however, are reviewed *de novo*.[112]

The reviewing court must uphold a trial court's ruling on a motion to suppress if the ruling is reasonably supported by the record and correct on any

---

[106] *Id*. at 77-83.
[107] *Id.* at 85.
[108] *Oles v. State*, 993 S.W. 2d 103, 106 (Tex.Crim.App. 1999).
[109] *See, Guzman v. State*, 995 S.W. 2d 85 (Tex.Crim.App. 1997).
[110] *Id.*
[111] *Id.*
[112] *Id.*

theory of law applicable to the case.[113] This is so even if the trial judge gives the wrong reason for the decision.[114] A reviewing court, however, may not reverse a trial court's ruling on any theory or basis that might have been applicable to the case, but was not raised.[115]

C.      *Relevant law and standard of review—standing.*

The rights protected by the Fourth Amendment to the Unites States Constitution and Article 1, Section 9 of the Texas Constitution are personal.[116] As such, an accused must show that the search violated his, rather than a third party's, legitimate expectation of privacy.[117] He must show (1) that he exhibited an actual subjective expectation of privacy in the place invaded (i.e., a genuine intention to preserve something as private), and (2) that society is prepared to recognize that expectation of privacy as objectively reasonable.[118]

To determine whether a person's expectation of privacy is reasonable, an appellate court examines the totality of circumstances surrounding the search, guided by a non-exhaustive list of factors:

- whether the accused had a property or possessory interest in the place invaded;

---

[113] *Laney v. State*, 117 S.W. 3d 854, 857 (Tex.Crim.App. 2003).
[114] *Id.*
[115] *Martinez v. State,* 91 S.W. 3d 331, 336 (Tex.Crim.App. 2002).
[116] *Matthews v. State*, 431 S.W. 3d 596, 606 (Tex.Crim.App. 2014).
[117] *Id.*
[118] *Id.*

- whether he was legitimately in the place invaded;

- whether he had complete dominion or control and the right to exclude others;

- whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; and

- whether his claim is consistent with historical notions of privacy.[119]

Although a reviewing court defers to the trial judge's fact findings, it reviews the legal issue of standing *de novo.*[120]

D.      *Relevant law — the doctrine of spoliation.*

The duty to preserve evidence is limited to evidence that possesses an exculpatory value that was apparent before the evidence was destroyed.[121] Therefore, a defendant must demonstrate that the lost evidence was both favorable and material to his case.[122]  A showing that the lost evidence *might* have been favorable does not satisfy the materiality requirement.[123]  Further, to establish that the failure to preserve the evidence constitutes a violation of due process or due course of law rights, appellant must demonstrate that the police acted in bad faith.[124]

---

[119] *Id*. at 606-07.
[120] *Id*. at 607.
[121] *Mahaffey v. State*, 937 S.W. 2d 51, 53 (Tex.App.-Houston [1st Dist.] 1996, *no pet.*), *citing, California v. Trombetta*, 467 U.S.479, 489 (1984).
[122] *Id., citing, U.S. v. Valenzuela-Bernal*, 458 U.S. 858, 873 (1982).
[123] *Id.*
[124] *Id.*

E. *Appellant failed to preserve all but two issues for appellate review.*

The State would first argue that Appellant has failed to preserve all but two of his issues for appellate review. To preserve error for appellate review, the Texas Rules of Appellate Procedure require a defendant to make a timely request, objection, or motion to the trial court, stating "the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context.[125] A motion to suppress is a specialized objection to the admissibility of evidence, and thus must be timely and sufficiently specific to inform the trial court of the complaint.[126] In a motion that does not identify specific constitutional violations, the defendant's argument and questions of witnesses at a suppression hearing may suffice to make the grounds apparent from the context.[127] If a defendant moves to suppress evidence and his motion is denied, his points of errors on appeal must comport with his grounds for suppression in the trial court.[128] The spirit of the preservation rule is violated when, at the suppression hearing, defense counsel narrows the issues he wishes for the court to consider, but changes or expands his issues on appeal.[129]

---

[125] TEX.R.APP.PROC. 33.1 (a)(1)(A).
[126] *Krause v. State*, 243 S.W. 3d 95, 102 (Tex.App.-Houston [1st Dist.] 2007, *pet. ref'd*.).
[127] *DeMoss v. State*, 12 S.W. 3d 553, 557-58 (Tex.App.-San Antonio 1999, *pet. ref'd*.).
[128] *Wilson v. State*, 71 S.W. 3d 346, 349 (Tex.Crim.App. 2002).
[129] *Strauss v. State*, 121 S.W. 3d 486, 489-90 (Tex.App.-Amarillo 2006, *pet. ref'd*.).

Here, defense counsel made a general allegation in his motion to suppress—claiming that the evidence was seized without probable cause or other authority in violation of Appellant's rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Texas Constitution.[130] At the suppression hearing, defense counsel became more specific in his complaint — asking the trial court to suppress the evidence because (1) his due process rights were violated under the doctrine of spoliation (i.e., the Cleburne Police Department released Appellant's vehicle to a towing service which prevented inspection of the vehicle's tail light assembly for spray paint and theoretically prevented the collection of useable fingerprints), (2) the probative value of the $483.00 found in the vehicle (and later returned to Appellant) was substantially outweighed by the danger of unfair prejudice, and (3) the IPad Mini was illegally seized due to a lack of a warrant.[131]

On appeal, although Appellant reurges the issues of spoliation and the illegal search of the IPad Mini, he also claims that (1) there was no evidence adduced at the suppression hearing that he was arrested (warranting on inventory search) (2) there was no evidence that he was arrested on outstanding warrants, (3) there was no evidence detailing the Cleburne Police Department inventory search procedure, and (4) that there was no evidence that either Alexander or Wickson used an

---

[130] C.R., pp. 80, 81.
[131] R.R. Vol. 11, pp. 72-77.

inventory sheet during the search of Appellant's vehicle. As such, because these additional four claims do not comport with the objections raised at the suppression hearing, they are not preserved for appellate review.

F.     *Appellant lacks standing to challenge the search of the IPad Mini.*

The State would also argue that Appellant lacked standing to challenge the search of the IPad Mini. The record of the suppression hearing reflects the following: that Officer Wickson first opened up the IPad and then opened up Settings; from Settings, Wickson ascertained the name of the owner of the IPad (i.e., Daniel Martinez) and his telephone number; that Martinez (who was contacted about the device) stated that the IPad belonged to him and that it was stolen; and that the IPad was returned to Martinez per CPD policy.[132] Thus, because Appellant did not have a property or possessory interest in the IPad, could not make a legitimate claim to information contained inside the IPad, did not have the right to exclude others from using the IPad, had not taken normal precautions customarily taken by those seeking to keep information contained in the IPad private, and his claim is inconsistent with historical notions of privacy, he lacks standing to challenge Wickson's search of this device.

G.     *Appellant's due process rights were not violated due to the doctrine of spoliation.*

---

[132] *Id*. at 46, 51, 52, 60, 61, 65-68, 70, 71.

Finally, the State would argue that Appellant's due-process rights were not violated due to the doctrine of spoliation — either as to his hope of challenging the legality of the traffic stop or the affirmative links to the methamphetamine. Concerning the inspection of the vehicle to challenge the legality of the traffic stop, Appellant cannot show (1) that CPD's release of the vehicle caused evidence to be lost or destroyed, (2) that an inspection of the rear tail lamp assembly (had the vehicle been secured in CPD's impound lot) would have produced evidence that was both favorable and material to his case or (3) that the evidence was lost or destroyed in bad faith.

The record of the suppression hearing indicates that after Officer Alexander released Appellant's vehicle to a towing service, it was repossessed by Dugger Motor Company (and possibly resold), and that later (during the State's trial preparation), the prosecution had Alexander locate the vehicle and take pictures of both the center console (i.e., State's Exhibit Nos. 2-5) and the left and right rear tail lamp assembly (i.e., State's Exhibit Nos. 6-12).[133] The record further reflects that that the truck was in the same condition as when Alexander initiated the traffic stop.[134] And, the prosecution indicated to the trial court that defense counsel was

---

[133] R.R. Vol. 7, pp. 5, 7; R.R. Vol. 10, pp. 4, 5; R. R. Vol., 11, pp. 7, 11, 29-35, 45, 62; R.R. Vol. 15, State's Exhibit Nos. 2-12.
[134] R.R. Vol. 11, pp. 29, 31, 33, 45.

aware of the vehicle's location and could inspect it at any time (if he so chose).[135] As such, the vehicle was not, in effect, lost or destroyed under the doctrine of spoliation.

In addition, an inspection of the rear tail lamp assembly would not have yielded evidence of favorable or material value. As demonstrated by State's Exhibit Nos. 1 and 13. (Alexander's in-car and body video and Wickson's body video respectively), the rear tail lamp assembly on both sides of the vehicle had spray paint covering them which obscured the brake lamps and reflectors in violation of TEX. TRANSPORTATION CODE ANN. §§ 547.323 and 547.325.[136] Moreover, Alexander's in-car video demonstrates that Appellant's vehicle drifted onto the improved shoulder in violation of §545.058.[137] Thus, an inspection of Appellant's vehicle (if it had been secured in CPD's impound lot) would not have led to evidence which could challenge probable cause for the stop.

Lastly, both Alexander and Wickson testified that Appellant's vehicle was not released to the towing service in bad faith.[138] According to these officers' testimony, the vehicle was not an elementary fact of an offense and, as such, it was departmental policy (1) to not secure it in the CPD impound lot and (2) to release it

---

[135] *Id*. at 11.
[136] *Id*. at 13-15, 19-21, 57, 58; R.R. Vol. 15, State's Exhibit Nos. 1, 13. *See also*, TEX.TRANSPORTATION CODE ANN. §§ 547.323 and 547.325.
[137] R.R. Vol. 15, State's Exhibit No. 1. *See also*, TEX. TRANSPORTATION CODE ANN. § 545.058.
[138] R.R. Vol. 11, pp. 25-27, 29, 35, 37, 45, 61-63, 69, 70.

to a towing service (i.e., for space reasons, it is impossible to secure all the vehicles in which drugs are found).[139]

As for the inspection of the vehicle to challenge affirmative links to the methamphetamine (i.e., possession of the contraband), Appellant again cannot show (1) that CPD's release of the vehicle caused evidence to be lost or destroyed, (2) that fingerprinting the center console would yield evidence that was favorable and material to his case, or (3) that the evidence was lost or destroyed in bad faith.

Although Appellant's vehicle was not secured in the CPD's impound lot, the opportunity to obtain meaningful evidence from fingerprinting the center console was not lost or destroyed. Under the facts of this case, fingerprint evidence would have yielded three results — regardless of whether or not Appellant's vehicle was impounded in CPD's secured lot. First, Appellant's fingerprints theoretically would have been found inside the center console, the hidden compartment, or both. Such evidence would only have served to further support the jury's finding of guilt. Secondly, fingerprints theoretically would have been found but, due to contamination, were unusable. In that the jury found Appellant guilty without fingerprint evidence, this scenario would not have altered Appellant's conviction. The third scenario is that, theoretically, no fingerprints were found inside the center console (potentially affecting the jury's verdict). Consequently, potential

---

[139] *Id*. at 25-27, 29, 37, 61, 62.

fingerprint evidence was not, in effect, lost or destroyed under the doctrine of spoliation.

Moreover, the theoretical fingerprint evidence would not be both favorable and material to Appellant's case. Caselaw holds that the materiality requirement of spoliation is not met if the evidence *might* have been favorable.[140] As stated above, the theoretical fingerprinting of Appellant's vehicle would yield three potential results —two of which would not be favorable or material. Concerning the third possible scenario (i.e., the center console was theoretically fingerprinted and Appellant's prints were not found) it is not certain that such a finding would have altered the jury's verdict. First, it is important to note that the jury found Appellant guilty without evidence that his fingerprints were inside the center console. Secondly, the theoretical absence of Appellant's fingerprints could be dismissed by a jury due to the possibility of his wearing gloves. Thus, Appellant has not shown that fingerprinting the center console would yield evidence that was favorable and material to his case.

Finally, as previously stated, the record reflects that any loss or destruction of potential fingerprint evidence (by CPD's action of releasing Appellant's vehicle to a towing service) was not done in bad faith, but per department policy.[141]

---

[140] *Mahaffey*, 937 S.W. 2d at 53.
[141] R.R. Vol. 11, pp. 25-27, 29, 35, 37, 45, 61-63, 69, 70.

40

Accordingly, for the reasons stated above, Appellant's Issue Number Four should be overruled.

## CONCLUSION AND PRAYER

For the reasons previously stated, it is respectfully submitted that there was no reversible error.

*WHEREFORE, PREMISES CONSIDERED,* the State respectfully prays that Appellant's conviction for "Possession of Controlled Substance with Intent to Deliver, ≥4 < 200 Grams" (i.e. Count One), be affirmed.

/s/ David W. Vernon
David W. Vernon
Assistant District Attorney
18th, 249th, 249th Judicial District
204 S. Buffalo, Suite 209
Guinn Justice Center
Cleburne, Texas 76033
817/556-6803
Fax No. 817/556-6814
Bar No. 0078514
davidv@johnsoncountytx.org

*CERTIFICATE OF COMPLIANCE*

The State of Texas, by and through her District Attorney, hereby certifies that it's brief contained  8,635 words and that it met the length requirement for a computer generated document as dictated by TEX. R. APP. PROC. 9.4(i)(2) (eff. 12/01/2012).

      /s/ David W. Vernon
David W. Vernon
Assistant District Attorney
18th, 249th, 249th Judicial District
Guinn Justice Center
204 S. Buffalo, Suite 209
Fax No. 817/556-6816
Bar No. 00785149

## CERTIFICATE OF SERVICE

*I HEREBY* certify that a true copy of the State's Brief was sent by electronic service, to Lane Rugeley, Attorney at Law, 16 N. Caddo Street, Cleburne, Texas 76031 and to Constantino Morales, TDC# # 01995563, James Lynaugh Unit, 1098 S. Highway, Fort Stockton, TX 79735, on this the 15th day of October 2015.

/s/ David W. Vernon
David W. Vernon
Assistant District Attorney
18th, 249th, 249th Judicial District
204 S. Buffalo, Suite 209
Guinn Justice Center
Cleburne, Texas 76033
817/556-6803
Fax No. 817/556-6814
Bar No. 0078514